STEVEN G. KALAR
Federal Public Defender
Northern District of California
GRAHAM ARCHER
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:         Graham_Archer@fd.org

Counsel for Defendant Toledo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE | Case No.: CR 19–71055 TSH<br><br>**SUPPLEMENTAL MEMORANDUM RE RELEASE ON BOND**<br><br>**Court:** Courtroom A, 15th Floor<br>**Hearing Date:** September 12, 2019<br>**Hearing Time:** 10:00 a.m. |

## INTRODUCTION

By and through his counsel, Dr. Toledo submits the following supplemental memorandum for the Court's consideration in determining the issue of release on bond. Dr. Toledo joins in United States Pretrial Services's recommendation that the Court set bond at $1,000,000 secured by a combination of cash and property, and release Dr. Toledo on a restrictive set of and conditions which will more than mitigate any risk of flight. Additionally, the government has produced FBI Reports of Investigation which further demonstrate that Dr. Toledo has been aware of the pending extradition request, and had no intention of traveling while it was pending. That discovery is attached as Exhibit H, and is discussed below.

**ARGUMENT**

**I.   U.S. Pretrial Services Correctly Recommends Dr. Toledo's Release on Bond**

At the hearing before this Court on July 19, 2019, Pretrial Services recommended detention, as they were presented with limited information and no sureties to balance against a perceived risk of flight.  Now, Pretrial Services recommends Dr. Toledo's release, and for good reason.  Since that first hearing, Dr. Toledo has provided information about his personal and financial circumstances, has presented a verified and secured bond package of $1,000,000, and has demonstrated that he was aware of the Peruvian government's efforts to have him arrested, and that he did not flee.

**A.   Dr. Toledo's Sureties and Bond Package are Extraordinary**

The bond Dr. Toledo is able to offer to secure his appearance at future court dates is extraordinary not only for its significant size, but because of its composition.  As the Court is aware from the September 5th bail addendum drafted by Pretrial Services, if Dr. Toledo were to fail to appear he would cost lifelong friends dearly.  The people who have come forward on behalf of Dr. Toledo to offer security for his release have known him between 10 and 50 years, and he counts them amongst his closest friends.  The two pieces of property offered to secure the bond are primary residences, and in the case of the Washington property, is the residence of two retirees who have known Dr. Toledo for over 50 years.  They will be present at the bond hearing, and are well aware of the consequences if Dr. Toledo were to violate the terms of his release.  Forfeiture of the bond would be an unrecoverable financial blow to them, but they are nonetheless unequivocal in their support of Dr. Toledo.

As the Court is aware from its review of the Pretrial Addendum, the sureties for Dr. Toledo are remarkable not only in the length of their friendship, but in the personal and professional backgrounds of the co-signers.  By contributing to Dr. Toledo's bond, with overwhelming press scrutiny of every case development, each of them puts their personal and professional reputation on the line along with their financial contribution.  Dr. Toledo's flight would not only harm his lifelong friends financially, it would be a betrayal of their friendship and would risk publicly tarnishing their reputations.  Dr. Toledo will do no such thing.

### B. The Government's Reports of Interview Support Release

On August 28th, the day before the detention hearing set for August 29th, the government produced the FBI Reports of Interview ("ROIs") referenced in their August 23rd filing. (*See* Exhibit H – Discovery Letter and Reports of Interview). Those ROIs document interviews of the Toledos' landlords conducted by the FBI on January 23, 2018, and March 7, 2019. That the government conducted interviews with these landlords in early 2018 and again in early 2019 makes clear that Dr. Toledo was, correctly, not viewed as a flight risk. If a target of an investigation was any real risk of flight, it would not be wise to interview his current landlord six months before you planned to arrest him. As has been demonstrated exhaustively, Dr. Toledo was aware of the pending extradition request, and remained living openly in this district.

In the March 7, 2019 interview, Dr. Toledo's landlord explains that Dr. Toledo "pled" for a lower rent because he "could not travel," and that the landlord ultimately agreed. (Exh. H at US_0002). This is irrefutable evidence, produced by the government, that Dr. Toledo's finances were in decline, and more importantly that he knows he is unable to travel from the United States. The government's own investigation validates Dr. Toledo's diminished financial situation and his unwillingness to leave the United States in light of the attempts of the Peruvian government to arrest and extradite him.

Dr. Toledo's question about purchasing the townhome was no more than the common fantasy of many a renter in the San Francisco Bay Area, as his assets in Peru have been frozen for some time.

### C. Dr. Toledo Poses No Risk of Flight that Cannot Be Easily Mitigated by Conditions of Release

Though the government continues to speculate about Dr. Toledo's current financial circumstances, and continues to emphasize his previous international travel, Dr. Toledo remains a low risk of flight for a number of reasons, as follows:

- Dr. Toledo has been aware of the attempt to extradite him since it was publicly announced by the Peruvian government on February 10, 2017, and carried around the globe in U.S. and international newspapers.
- Dr. Toledo's finances have deteriorated since the Peruvian announcement of his arrest warrant to the point where he lacks the ability to flee, even had he the will to do so.

SUPPLEMENTAL MEMORANDUM RE RELEASE ON BOND
*TOLEDO*, CR 19–71055 TSH

- Dr. Toledo has continued to live openly in California since the announcement of the attempt to extradite him.
- Dr. Toledo has no significant ties to any country other than the United States and Peru.
- Dr. Toledo has no unexpired passport, nor will any government issue him one.
- Dr. Toledo is subject to an INTERPOL Red Notice, which would result in his arrest at any border crossing or port of entry.
- Dr. Toledo has a long history of residence in this district, dating back to 1970.
- Dr. Toledo has extensive personal and professional ties to this district and to the United States.
- Dr. Toledo is well known globally, and easily recognizable.  Intense press coverage of him during his presidency has continued to the present day, including worldwide coverage of Peru's attempt to extradite him and his arrest in this matter.
- Dr. Toledo is willing to submit to electronic GPS tracking and highly restrictive conditions of release.

**CONCLUSION**

Dr. Toledo poses no risk of flight that cannot be mitigated by the proposed bond package and the extremely restrictive conditions of release.  The record before the Court demonstrates that Dr. Toledo was well aware of the pending extradition request, and that he did not leave the United States.  Further, the record demonstrates that he does not have the financial or practical means to flee.  Dr. Toledo asks that the Court adopt Pretrial Services's recommendation that he be released on bond.

Dated:   September 6, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
GRAHAM ARCHER
Assistant Federal Public Defender

SUPPLEMENTAL MEMORANDUM RE RELEASE ON BOND
*TOLEDO*, CR 19–71055 TSH

4