UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE

Case No. 19-mj-71055-MAG-1 (VC)

**ORDER DIRECTING RELEASE ON BAIL**

Re: Dkt. No. 32

      The federal government has initiated extradition proceedings before a federal magistrate judge against the former President of Peru, Alejandro Toledo Manrique, under 18 U.S.C. § 3184. The purpose of the proceedings is to determine if Toledo should be sent back to Peru to stand trial on bribery charges. The magistrate judge's task is to determine whether the alleged crime falls within the terms of the extradition treaty between Peru and the United States, and whether there is probable cause to believe that Toledo committed the crime. *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc).

      Congress has not provided for bail by statute in the extradition context. The federal courts have filled that gap with a well-recognized "presumption against bail in an extradition case." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Nevertheless, "special circumstances" can justify release pending extradition. *Wright v. Henkel*, 190 U.S. 40, 63 (1903). The burden is on the person subject to extradition to demonstrate the existence of special circumstances and that he is not a flight risk. *See In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006).

      The magistrate judge denied Toledo bail on the ground that he was a flight risk. Toledo

has filed a motion asking this Court to revisit the magistrate judge's ruling and to allow Toledo to be released on bail, subject to the condition that he be placed on home lockdown and submit to GPS monitoring.[1] The motion is granted for the reasons stated at the hearing. Those reasons are summarized briefly here.

On this record, Toledo has demonstrated that special circumstances warrant his release. He has been held in solitary confinement for nearly three months at the Santa Rita Jail. For a combination of reasons, including Toledo's status as a former head of state and his request for protective custody, the jail placed Toledo in administrative segregation. *See* Mattison Decl., Dkt. No. 37-1. That designation confines Toledo to a small cell for all but an hour of every two days. According to the staff psychiatrist at the jail, detention under these conditions has already initiated a marked decline in Toledo's mental health. *See* Ex. M, Dkt. No. 41. Especially for a person who has not been convicted of a crime, the severity of this restraint on liberty raises serious due process concerns. *See Davis v. Ayala*, 135 S. Ct. 2187, 2208–10 (2015) (Kennedy, J., concurring). Moreover, Toledo's detention is likely to continue unabated for many months, if not years, in light of the anticipated length of extradition proceedings. Peru's extradition request contains thousands of documents that will require translation from several languages. It also implicates issues of first impression with respect to our extradition treaty with Peru. *See* Extradition Treaty, U.S.-Peru, July 26, 2001, S. Treaty Doc. No. 107-6.

The combination of the anticipated length of the proceedings and the conditions of Toledo's confinement creates a special circumstance that qualifies Toledo for release. Indeed,

---

[1] Toledo moved for determination of this issue under Federal Rule of Criminal Procedure 59. That rule does not apply in extradition proceedings. *See Santos*, 830 F.3d at 992. Nonetheless, both sides agree that this Court has the authority to rule on Toledo's motion. *See In re Extradition of Vladimir Blasko to the Slovak Republic*, 2018 WL 3691859, at *5 (E.D. Cal. Aug. 1, 2018) (collecting cases). They appear to be correct about that. A magistrate judge's bail determination in an extradition case—but not its ultimate conclusion on extradition—is treated as a decision of the district court for purposes of appeal. *In re Requested Extradition of Kirby*, 106 F.3d 855, 859–60 & n.4 (9th Cir. 1996). For that reason, a district judge may be able to decide issues collateral to extradition under the background rules that apply to matters referred to a magistrate judge. *See* Crim. Local R. 7-1(b)(13). This means, of course, that this Court conducts a de novo determination of the issue, notwithstanding the government's unsupported assertion that the magistrate judge's decision should be reviewed for abuse of discretion.

"unusual delay" can itself be a special circumstance. *Salerno*, 878 F.2d at 317. To the extent that the government contends the Court cannot consider Toledo's conditions of confinement in connection with the delay, that simply cannot be correct. *See Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1006 (D. Ariz. 2009) (explaining that "what factors to consider" is "within the sound discretion" of the court) (internal quotation marks omitted). It's true, as the government notes, that jail administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Thus, if the government's entitlement to detain a person is not at issue, a court cannot order release to remedy unlawful conditions of confinement outside of narrowly cabined circumstances. *See Brown v. Plata*, 563 U.S. 493, 511–12 (2011). But this motion presents a choice between detention in solitary confinement or release on bail. The Court does not (and cannot) question the Santa Rita Jail's decision to place Toledo in administrative segregation, but in this context the hardship of detention is one factor among many that can justify release. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981); *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990). Indeed, *Bell* (which is the primary authority on which the government relies) referred to bail hearings as a safeguard that can mitigate restrictive conditions of pretrial detention. 441 U.S. at 536.

Of course, Toledo must still prove, by a preponderance of the evidence, that he does not pose a flight risk or a danger to the community. *See Santos*, 473 F. Supp. 2d at 1035 n.4. The government does not contend he is a danger to the community, so the only question is whether he will flee rather than appear at future extradition proceedings. The risk of flight cannot be taken lightly because the United States' treaty obligation to Peru is of "paramount importance," an obligation that is only heightened by Toledo's status as its former president. *Jimenez v. Aristiguieta*, 314 F.2d 649, 653 (5th Cir. 1963). And certainly it would be unduly risky to release Toledo without any restrictions on his freedom: as a well-traveled former head of state, Toledo has international ties; and as a president accused of degrading his office for personal profit, he might have access to significant wealth to fund his escape.

The pretrial services office, however, has determined that risk of flight can be significantly diminished by several restrictions—most prominently, home lockdown and the use of GPS monitoring. Toledo also lacks a passport and thus the ability to readily capitalize on his contacts with foreign countries. *Cf. In re Extradition of Berrocal*, 263 F. Supp. 3d 1280, 1304–05 (S.D. Fla. 2017). In addition to the difficulty of fleeing, Toledo has longstanding ties to Northern California, and two of his closest friends would lose their home should he abscond during the extradition proceedings. Therefore, on this record, Toledo has carried his burden of proving that he is not a flight risk under this package of restrictions.

The final question is whether to stay this ruling to allow the government time to seek relief from the Court of Appeals. Because Toledo is currently being harmed by his severe confinement, only the shortest possible stay could be appropriate. Therefore, this order directing Toledo's release will be stayed until Tuesday, October 22, 2019. If the government files an emergency motion with the Court of Appeals by that date, the stay is automatically extended to October 29, to give the Court of Appeals time to act on the motion.

Furthermore, if the government is able to identify an alternative detention arrangement for Toledo, it may file a motion in this Court seeking relief from this ruling. Any such motion must be filed no later than October 22, with a response from Toledo to be filed by October 25. Such a motion will also automatically extend the stay of this ruling to October 29. The Court will schedule a hearing, if necessary, on October 29.

Absent the filing of a motion with the Court of Appeals or with this Court seeking relief from this ruling, Toledo must be released on October 22, subject to the restrictions recommended by the pretrial services office. The matter of the bond securing Toledo's release is referred to the magistrate judge.

**IT IS SO ORDERED.**

Dated: October 10, 2019

VINCE CHHABRIA
United States District Judge