STEVEN G. KALAR
Federal Public Defender
Northern District of California
GRAHAM ARCHER
MARA K. GOLDMAN
Assistant Federal Public Defenders
1301 Clay Street, Suite 1350N
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:          Graham_Archer@fd.org


Counsel for ALEJANDRO TOLEDO MANRIQUE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE. | Case No.  19-mj-71055 MAG (VC) **OPPOSITION TO GOVERNMENT'S MOTION FOR RELIEF FROM RULING DIRECTING RELEASE ON BAIL PENDING EXTRADITION PROCEEDINGS** |

## INTRODUCTION

The government argues that this Court should reconsider its order directing that Dr. Toledo be released on bail, but Dr. Toledo's circumstances have not changed in any meaningful way. The government has moved him to a different jail, but he remains isolated for approximately 23 hours per day, in a cell smaller than a parking space, and in the first 11 days at his new jail, he was able to interact with another inmate *one time* for a total of approximately one hour. There is no reason for this Court to revisit its order directing that Dr. Toledo be released on bail. The government's motion

should be denied.

**ARGUMENT**

**I.     The Combination of Dr. Toledo's Conditions of Confinement and the Anticipated Length of the Proceedings Remain Special Circumstances Warranting Release**

The government contends that there is no need to release Dr. Toledo because he is now housed in a "sheltered living unit," rather than "solitary confinement." Govt. Mot. at 3:21-23. The name may have changed, but the circumstances are strikingly similar.

In *Davis v. Ayala*, 135 S.Ct. 2187 (2015), Justice Kennedy described the "usual pattern" of the life of an inmate in solitary confinement: the inmate is "in a windowless cell no larger than a typical parking spot for 23 hours a day; and in the one hour when he leaves it, he likely is allowed little or no opportunity for conversation or interaction with anyone." *Id.* at 2208 (Kennedy, J., concurring) (citations omitted). Justice Kennedy could have been describing Dr. Toledo's confinement at Maguire.

Dr. Toledo spends approximately 23 hours a day in a cell smaller than the average parking space.[1] *See* Declaration of Graham Archer in Opposition to Government's Motion for Relief, ("Archer Decl."), attached hereto as Exhibit A, at ¶ 4. Although the government asserts the inmates are supposed to be let out of their cells for approximately two to three hours during the day and one hour in the evening, *see* Declaration of Sheriff's Deputy John Bagis ("Bagis Decl.") at ¶ 5, this has not been Dr. Toledo's experience. Instead, Dr. Toledo has been limited to between 45 minutes and an hour per day outside of his cell. *See* Archer Decl. at ¶ 4.

More importantly, as of October 22nd, Dr. Toledo had been out of his cell with another inmate only once, for approximately one hour. *See id.* at ¶ 8. For the first ten days that Dr. Toledo was at Maguire, he had no contact with any inmate. *See id.* On October 21st, a higher ranking deputy (as opposed to the usual jail guards) suddenly appeared and suggested to Dr. Toledo that he and the inmate in the adjacent cell should go to the day room at the same time to spend time together. *Id.* The other inmate is a former police officer who has been convicted of multiple counts of forcible

---

[1] According to the government, Dr. Toledo's cell is 106.25 square feet. The average parking space in the United States is 180 square feet. *See* USA.streetsblog.org/2016/07/05/parking-takes-up-more-space-than-you-think.

rape, forcible oral copulation, kidnapping, and first degree burglary. He is set to be sentenced in December, when he will face a sentence of 118 years to life. *Id.* at ¶ 6.[2] They spent approximately one hour together in the day room. *See id.* at ¶ 8.

The government makes much of the fact that the sheltered housing unit includes 16 other inmates. But the number of inmates in the unit is irrelevant; as Deputy Bagis acknowledges, "security concerns" prevent Dr. Toledo from having any contact with 14 of them, with only two of them in protective custody. *See* Bagis Decl. at ¶ 4. And of the two that Dr. Toledo is hypothetically permitted to interact with, he has only seen or heard one in the entire time he has been at Maguire. Indeed, based on Dr. Toledo's experience in his first 11 days at Maguire, he can expect to have contact with another inmate approximately .04% of the time (1 hour out of every 264). Nor is there any guarantee that there will always be another inmate in protective custody with whom Dr. Toledo is permitted to have contact. Once the former police officer is sentenced in December, he will be moved to state prison, leaving one other inmate in that level of protective custody with whom Dr. Toledo may be permitted to interact intermittently. Dr. Toledo remains in custody with "little or no opportunity for conversation or interaction with anyone." *Ayala, supra.*

The government also fails to address the extent to which Dr. Toledo's mental and physical health continues to deteriorate as a result of the three months he has already spent in solitary confinement at Santa Rita. *See* Archer Decl. at ¶¶ 12-15. Even if the conditions at Maguire might be briefly tolerable for someone entering jail, they are not tolerable for someone who – like Dr. Toledo – has already suffered the effects of months of isolation. *See Ayala*, 135 S.Ct. at 2209 (Kennedy, J., concurring) (noting the long-term psychiatric effects of even short stints in solitary confinement). As indicated in the attached declaration, undersigned counsel has observed Dr. Toledo's significant mental and physical decline. Archer Decl. at ¶ 11.

## II. There Is No Reason to Revisit the Court's Other Findings

The government argues not just that the Court should reassess Dr. Toledo's conditions of confinement, but also that the Court should reconsider all of its findings. *See* Govt. Mot. at 4-6. That

---

[2] Such contact is contrary to 18 U.S.C. § 3142(i)(2), which directs that pretrial detainees be held "in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences."

was not the purpose of the stay, however.  The 10/10/19 Order makes clear that the Court granted the stay for two reasons.  First, the Court stayed the order to allow the government to appeal to the Ninth Circuit, which the government has not done.  Second, the Court stayed its order so that the government could seek relief from its ruling "if the government is able to identify an alternative detention arrangement for Toledo."  *See* 10/10/19 Order at 4.  The purpose of the stay was to allow the government time to find an appropriate place to detain Dr. Toledo, not to give the government an opportunity to re-litigate each of the Court's findings.

In any event, there is no reason to revisit the Court's original determination.  As the Court has already found, this case involves a question of first impression, thousands of documents, and witnesses from Israel, Peru, and Brazil.  The government has conceded that even a simple case can take a year to resolve.  This is not a simple case.  The prospect of a year or more in solitary confinement is a special circumstance.  As to the question of flight risk, Pretrial Services has not given any indication that it intends to change its assessment that any risk of flight can be addressed through appropriate conditions.

**III.    The Government Should Not Be Granted Any Additional Stays**

The government will no doubt ask this Court for still more time to send Dr. Toledo to yet another facility where it will isolate him in yet another euphemistically named version of solitary confinement.  Any such request should be denied.  Dr. Toledo has already been in solitary confinement for 102 days.  Judge Hixson told the government to find an alternative to solitary confinement in August, but it failed to do so.  Instead, the government blamed Dr. Toledo for his situation and insisted that keeping a man who has not been convicted of a crime in solitary confinement is not a special circumstance.  In October, this Court gave the government yet another opportunity to find an alternative, but made clear that because Dr. Toledo is "being harmed by his severe confinement, only the shortest possible stay could be appropriate."  The government should not be permitted to further prolong that harm.

**CONCLUSION**

The circumstances of Dr. Toledo's confinement have changed, but not in any meaningful way, and not in a way that should upset this Court's findings and conclusion.  The government's plan

1  appears to be to keep Dr. Toledo in solitary confinement, with intermittent contact with a convicted

2  rapist who awaits a life sentence.  The government's attempts to add a positive gloss to the conditions

3  of confinement show an extraordinary disregard for Dr. Toledo's health, safety, and well-being.  Dr.

4  Toledo respectfully requests that the government's motion for relief be denied and that the stay of the

5  Court's Order Directing Release on Bail be lifted.

6

7      Dated:      October 25, 2019                    Respectfully submitted,

8                                                      STEVEN G. KALAR
                                                        Federal Public Defender
9                                                      Northern District of California

10                                                            /S

11                                                     GRAHAM ARCHER
                                                        MARA K. GOLDMAN
12                                                     Assistant Federal Public Defenders

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28