UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE | Case No. 19-mj-71055-MAG-1 (TSH)<br><br>**ORDER DENYING MOTION FOR RECONSIDERTION**<br><br>Re: Dkt. No. 49 |
|---|---|

In an extradition proceeding, there is no Sixth Amendment right to counsel, *see United States v. Yousef*, 327 F.3d 56, 142 n.66 (2d Cir. 2003); *DeSilva v. DiLeonardi*, 181 F.3d 865, 868 (7th Cir. 1999), and there is no statutory right to it either. *See* 18 U.S.C. § 3006A(a)(1) & (2). However, this District's General Order No. 2 provides for the discretionary appointment of counsel "[w]henever a district judge or magistrate judge determines that the interests of justice so require . . . for any financially eligible person who . . . is held for international extradition under Title 18 U.S.C. Chapter 209." G.O. 2 § IV(a)(2)(g). On August 6, 2019, Alejandro Toledo signed a financial affidavit that stated he had minimal monthly income and little in assets and that his wife had no monthly income. The Court relied on that financial affidavit to conclude that Toledo is a "financially eligible person." Given the complexities of this extradition proceeding and the nature of Peru's accusations against Toledo, the Court additionally found that the appointment of counsel was in the interests of justice.

Beyond simply the affidavit, Toledo made expansive arguments concerning his and his wife's lack of assets. In support of his argument that he lacks the financial means to flee, and therefore should be released from detention, "Dr. Toledo has disputed, and continues to dispute, the government's suggestion that his wife has access to significant amounts of money." ECF No.

39 at 9; *see also* ECF No. 32 at 16 (asserting that "[t]he Toledos were struggling").

The government moved for reconsideration of the Court's order appointing counsel.[1] Bank statements revealed that in the five months preceding the date of Toledo's financial affidavit, his wife, Elaine Karp-Toledo, received more than a million dollars in wire transfers from her mother, Eva Fernenbug. The defense argued that Toledo did not lie in his financial affidavit because these transfers were *gifts* rather than *income*, and in the alternative, that he may not have known about the money. However, the obvious purpose of the financial affidavit is to determine the defendant's ability to pay for counsel, so this hairsplitting distinction between gifts and income – which would, of course, be appropriate in a tax return – caused the Court to have some concerns about the quality of the information provided in the affidavit, especially since the gifts were so large. Also, outside of the affidavit, Toledo's arguments about his and his wife's lack of assets were more sweeping and did not seem susceptible to the gifts/income distinction. The government also submitted checks showing that for at least five months between November 2018 and June 2019, Karp-Toledo paid the $10,000 monthly legal fee for her husband's then-retained attorney, not to mention the rent for the Toledos' house, suggesting the availability of funds to pay for counsel. Toledo's alternative argument that he sincerely thought his wife was out of money when she was in fact a millionaire strained credulity.

Under the circumstances, the Court required greater disclosure in order to determine whether the appointment of counsel continued to be justified and, if so, whether Toledo should be required to pay for some or all of that expense. *See* G.O. 2 § IV(B)(3) ¶ 5. Accordingly, the Court ordered Toledo to complete and submit to the Court the Expanded Declaration in Support of Attorney or Other Services Pursuant to the Criminal Justice Act, ECF No. 72, which he has done.

The Court now addresses the merits of the government's motion for reconsideration. The Criminal Justice Act requires each district court to establish "a plan for furnishing representation

---

[1] The Court rejects Toledo's argument that the government lacks standing to bring this motion. The Ninth Circuit did not so hold in *United States v. Wells*, 879 F.3d 900 (9th Cir. 2018). And Volume 7, section 210.40.20(g) of the Guide to Judiciary Policy states that "[t]he prosecution and other interested entities may present to the court information concerning the person's eligibility" for appointed counsel.

2

for any person financially unable to obtain adequate representation . . ." 18 U.S.C. § 3006A(a). This Court has done so in its General Order No. 2. G.O. 2 § I. The second paragraph of section IV(B)(3) of the General Order specifically addresses the issue of family resources. It says:

> The initial eligibility determination must be made ***without regard*** to the financial ability of the person's family to retain counsel ***unless the person's family indicates a willingness and ability to do so promptly***. (emphasis added)

That language is clear. The Court can't include spousal assets in the financial eligibility determination unless the spouse indicates a willingness to pay. *See also United States v. Lexin*, 434 F. Supp. 2d 836, 841-42 (S.D. Cal. 2006) (interpreting similar language in Volume VII of the Guide to Judiciary Policy). It's true that the General Order states that the "initial" eligibility determination must be made without regard to the family's assets (unless they are willing and able to pay), but that does not imply that a *subsequent* eligibility determination can be made differently. The General Order goes on to state in the fifth paragraph of section IV(B)(3) that "[i]f at any time after the appointment of counsel a judge finds that a person provided representation is financially able to retain private counsel or make partial payment for the appointed representation, the judge may terminate the counsel appointment or direct the defendant to pay available funds as provided in 18 U.S.C. § 3006A(f)." The financial ability tests in paragraphs two and five are substantively the same; the fifth paragraph simply addresses the situations of changed circumstances or new or different information becoming available to the Court.

Here, Karp-Toledo has not indicated a willingness to pay. To the contrary, defense counsel states that she is unwilling to do so, in part because she may need the money she has to pay for expenses in connection with her own potential legal issues.

However, this is not necessarily the end of the matter because sometimes people lie about what assets they have, or who has them. Putting all your money in your spouse's name to avoid payment obligations is hardly a new idea. A defendant who has a lot of money but who wants the government to foot the bill for his defense has an incentive to say his money all belongs to family members, and courts can't just credulously accept that assertion when it seems false. *See, e.g., United States v. Lefkowitz*, 125 F.3d 608, 621 (8th Cir. 1997). Indeed, an affidavit claiming

3

indigency is particularly unworthy of belief when the government later comes forward with information that the defendant had access to significantly more funds than he disclosed in the affidavit. *See United States v. Harris*, 707 F.2d 653, 660-61 (2d Cir. 1983).

If Toledo had accurately disclosed his wife's assets in the first place, this motion would be easy. His wife is sitting on a large amount of cash, given to her by her mother. Yes, she used her personal funds to pay for some joint expenses, as well as for Toledo's prior retained counsel, but that's not unusual in a marriage, and in any event, now she's no longer willing to pay for his counsel. Whether she's willing to do something or not is for her to say, *see* G.O. 2 § IV(B)(3) (family must "indicate[]" they are willing and able to pay), and people can change their minds. Maybe she was willing to pay for retained counsel when the monthly expense was small, but once her husband was arrested and a formal extradition proceeding began, it became too much. Regardless, she is the decider of what she is willing to do.

Nothing about this situation suggests her money isn't really *hers*. It's not in a joint bank account, for example, and there is no evidence that the money was ever in her husband's possession. There are at least two transfers of money from Karp-Toledo to her husband, but the government is wrong to say this proves they have joint access to the funds. If these were joint accounts, after all, she wouldn't have needed to do a transfer. The transfers actually show that Toledo did not have access to this money; it was in his wife's control. Further, the transfers do not show that Toledo is hiding his assets in his wife's name because they are in the wrong direction – from her to him. (Transfers *from* a defendant who later claims indigency would be a red flag.) As to the source of the funds, if *his* mother had gifted her this money, that would look like an attempt to put the husband's assets in the wife's name. But the money came from her own mother, and a child is a natural recipient of a parent's gift.

The question, then, is whether Toledo's false representation to the Court that his wife did not have access to significant funds changes the equation. Certainly, that misrepresentation is concerning. But it's also to the side of the issue now before the Court. Under General Order No. 2, if Toledo's wife is unwilling to pay for his legal expenses, it doesn't matter how much money she has, so Toledo lied about something that is ultimately irrelevant to the appointment of counsel.

4

While misrepresentations are not to be condoned or rewarded, taking all of the facts into account, there just doesn't seem to be a basis to conclude that the money in his wife's accounts is actually his.  Also, there is no reason to think he lied about how much money *he* has, and it's not enough to afford counsel in this complex extradition case.

Accordingly, the government's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 31, 2020

THOMAS S. HIXSON
United States Magistrate Judge