UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE
EXTRADITION OF ALEJANDRO
TOLEDO MANRIQUE

Case No. 19-mj-71055-MAG-1 (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 82

In this extradition proceeding, Alejandro Toledo Manrique moves to compel the production of sixteen categories of documents. ECF No. 82. "Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedures as law and justice require." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988) (citing *Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986)). "In exercising its discretion to grant or deny discovery, an extradition court should consider that extradition proceedings are not to be converted into a dress rehearsal for trial and whether the resolution of the contested issue would be appreciably advanced by the requested discovery." *Id*. (citations and quotation marks omitted).

Toledo asks for four categories of discovery. First, he seeks discovery that will enable him to contest probable cause. Second, he seeks *Brady* evidence (*see Brady v. Maryland*, 373 U.S. 83 (1963)). Third, he seeks discovery related to ancillary issues that have arisen in this litigation. Fourth, he seeks the affidavit in support of the search warrant that was executed at his home when he was arrested in connection with this extradition proceeding. The Court held a hearing this morning on Toledo's motion to compel and now issues this order.

## A. Evidence Concerning Probable Cause

The basic function of an extradition proceeding is to determine "whether there is evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, in other words, whether there is probable cause." *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc) (citations and quotation marks omitted). In assessing whether the government has met this burden, "[t]he credibility of witnesses and the weight accorded to their testimony is solely within the province of the extraditing magistrate." *Mainero v. Gregg*, 164 F.3d 1199, 1205-06 (9th Cir. 1999) (citation and quotation marks omitted). The Ninth Circuit has held that it is appropriate for the Court in an extradition proceeding to limit discovery to matters relevant to the existence of probable cause. *See In the Matter of the Extradition of Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986) ("The magistrate granted his discovery motion to the extent it related to the question whether there existed probable cause tying appellant to the murders. Because the purpose of the extradition hearing is simply to determine whether there exists probable cause that the fugitive committed the offense charged, the magistrate properly limited discovery.").

Here, Toledo argues that the following requests for production ("RFPs") are relevant to probable cause:

> RFP 10. "Unredacted copies of U.S. Embassy Lima's 2016-2019 human rights reports on Peru to responsible bureaus in the U.S. Department of State."
>
> RFP 11. "Complete unredacted official transcripts or 'nota(s) verbal(es)' of Peruvian prosecutor interviews of Josef Maiman in Israel in March of 2019, April 2019, and/or any other date not disclosed to the Toledo defense."
>
> RFP 12. "Complete unredacted official transcripts or 'nota(s) verbal(es)' of Peruvian prosecutor interviews of Jorge Barata in Curitiba, Brazil, including but not limited to: the February 2018 interview concerning political party financing, and the multiple interviews (at least 3) conducted in April 2019."
>
> RFP 13. "Complete unredacted copy of any agreement between Peruvian prosecutors and Josef Maiman, whether final or draft, concerning Maiman's cooperation in the investigation or prosecution of Dr. Toledo."
>
> RFP 14. "Complete unredacted copy of the Peruvian prosecutor's February 2019 'Benefits and Cooperation Agreement' with Odebrecht executives Jorge Barata, Ricardo Boleida, Renato Ribeiro,

Antonio Carlos Nostre, and Constructora Norberto Odebrecht."

Toledo argues that these RFPs seek evidence related to whether the two primary witnesses against him, Jorge Barata and Josef Maiman, were coerced. The Ninth Circuit has held that an "extradition court should . . . consider[] . . . evidence of coercion because a coerced statement is not competent evidence and cannot support probable cause." *Santos*, 830 F.3d at 1001; *see also United States v. Kollmar*, 2019 WL 4261064, *4 (N.D. Cal. Sept. 9, 2019) (ordering production of evidence relevant to probable cause). Here, Peru has provided these witnesses' official statements, and in RFPs 11 and 12 Toledo seeks their subsequent statements. Toledo argues that Maiman and Barata have given interviews that seriously undermine their official statements and that the conditions under which they made their official statements cast doubt on the voluntariness of those statements. These RFPs therefore seem narrowly tailored to information that could potentially undermine the official statements. RFPs 13 and 14 seek the terms of Peru's agreements with Maiman, Barata and others. These documents would likely show the conditions under which these witnesses agreed to make their statements to Peru, which could shed light on whether there was coercion. For RFPs 11-14, the government argues that there is no evidence that the statements by Barata and Maiman were in fact coerced. However, that argument puts the cart before the horse because this discovery seeks to obtain such evidence. Whether or not the evidence responsive to RFPs 11-14 would amount to a showing of coercion, Toledo has at least articulated a basis for how that evidence could potentially undermine the existence of probable cause.

More substantively, the government argues that the requested items are not within the United States' possession, custody or control. It is true that the Court lacks authority to compel the production of documents that are only in the possession of a foreign government. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146-47 (9th Cir. 2001) ("[t]he district court does not have the power to order the production or appearance of . . . evidence and witnesses" that are "under the control of the New Zealand government"); *In re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999) ("[T]o the extent that petitioner's motion for discovery included requests for materials in the possession or control of Canada, it was properly denied. The United States does not have

3

any obligation or authority to obtain these materials on behalf of petitioner."); *In re Extradition of Zhenly Ye Gon*, 613 F. Supp. 2d 92, 101-02 (D.D.C. 2009) ("[T]he right to discovery could at most extend to the United States itself . . . . *Nemo dat quod non habeat*; it cannot give what it does not have.").[1] Nor is the Court willing to order the government to ask Peru for materials the United States doesn't have. That violates the ordinary rule of discovery that a litigant is obligated to produce only what is in its possession, custody or control. However, Toledo is entitled to more than just an unsworn assertion, offered as an alternative argument, *see* ECF No. 83 at 16 ("These documents . . . are not within the possession, custody or control of the U.S. government. Even if they were . . ."), that the government does not possess responsive materials. Accordingly, the Court **ORDERS** the government to either produce all documents responsive to RFPs 11-14 that are in its possession, custody or control or to serve a declaration under penalty of perjury stating that after conducting a reasonable and diligent investigation it has determined that it has none, within 30 days. And to be clear, this order applies to the United States government, not just to the U.S. Attorney's Office for this District.

RFP 10, by contrast, has nothing to do with Toledo's case in particular or the witnesses against him. General reports on the status of human rights in Peru are inappropriate subjects of discovery because they conflict with the rule of non-inquiry. *See Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005) (stating that "[w]e have long adhered to the rule of non-inquiry—that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state," and affirming denial of discovery on the use of the death penalty in Thailand). Accordingly, Toledo's motion is **DENIED** as to RFP 10.

**B.** *Brady* **Evidence**

Toledo says that most of his RFPs are intended to uncover *Brady* evidence. Those RFPs

---

[1] *Kraiselburd* is not to the contrary. In that case, the extradition court had ordered the requesting country to produce documents related to probable cause. The Ninth Circuit did not reach the issue of whether such discovery was proper, but instead held that more sweeping discovery was not appropriate. 786 F.2d at 1399. *See In re Extradition of Handanovic*, 826 F. Supp. 2d 1237, 1241 (D. Or. 2011) (similarly concluding that the court cannot order the requesting country to produce documents and rejecting the argument that *Kraiselburd* held to the contrary).

4

are as follows:

> RFP 1. "The complete unredacted February 2017 provisional arrest and/or extradition request package submitted by Peru to the United States, with any related supplemental submissions."
>
> RFP 2. "Any material relating to Dr. Toledo obtained by the United States Attorney for the Eastern District of New York from Odebrecht, Braskem, the Peruvian government, and/or any other entity in connection with the Odebrecht/Braskem 2016 plea agreement in the Eastern District of New York and any related investigation of Dr. Toledo."
>
> RFP 3. "Any information regarding Dr. Toledo obtained by the United States government from the investigation in the District of Maryland."
>
> RFP 4. "All correspondence concerning the Toledo matter from the Peruvian government (including but not limited to the Peruvian Embassy in Washington, D.C.; the Peruvian Mission to the Organization of the American States; and the Peruvian Consulate General in San Francisco) to the United States government (including but not limited to the U.S. Embassy in Lima; the U.S. Department of State (including but not limited to the Office of Foreign Missions); the U.S. Department of Justice; and the U.S. National Bureau of Interpol)."
>
> RFP 5. "All correspondence concerning the Toledo matter between the U.S. Embassy Lima and the U.S. Department of State."
>
> RFP 6. "Complete unredacted copies of the Peruvian government's requests for judicial assistance in the Toledo matter that were directed to the governments of the United States, Switzerland, Brazil, Israel, Costa Rica, Uruguay, Andorra, or any other government."
>
> RFP 7. "Copies of all materials seized from the home of Dr. Toledo during the July 2019 search and all material concerning Dr. Toledo and his wife obtained (1) through that search warrant or (2) as a result of materials obtained through that warrant or that search."
>
> RFP 8. "An unredacted search warrant affidavit submitted in support of the search warrant issued for Dr. Toledo's home."
>
> RFP 9. "All reports of interviews, surveillance, and other investigation performed by the FBI, the United States Marshal Service, or other federal or state agencies of Dr. Toledo since Peru propounded its first request for arrest and extradition in 2017. This request includes a request for all communications and documentation of Dr. Toledo's conditions of confinement performed by the United States Marshals or San Mateo Sheriff's Department."
>
> RFP 15. "Complete and unredacted copies of any communications between the government of Peru (including the Peruvian embassy in

> Tel Aviv)[2] concerning possible exclusion of Dr. Toledo and/or Eliane Karp Toledo from Israel."
>
> RFP 16. "Complete unredacted copies of Peruvian government communications concerning Dr. Toledo with Interpol General Secretariat or Interpol National Bureau in Lima."

For RFPs 2, 3 and 7-9, Toledo argues the government should be ordered to produce all responsive documents. For RFPs 1, 4-6 and 15-16, Toledo argues the government should either produce responsive materials, or at a minimum, review the materials and produce any *Brady* material found in them.

Some of these RFPs are difficult to understand as sources of exculpatory evidence in this extradition proceeding. RFP 15 looks like it seeks information that is relevant to risk of flight. How is Israel's possible exclusion of the Toledos relevant to whether he is guilty of soliciting bribes and peddling influence in Peru? Discovery into the conditions of his confinement (RFP 9) seems unlikely to yield *Brady* evidence. An unredacted search warrant affidavit (RFP 8) seems like evidence you would want to challenge the legality of a search warrant, but not a likely source of *Brady* evidence. Other RFPs seem to ask for things the United States would not likely have, such as Peru's communications with Interpol (RFP 16) and Peru's requests for assistance sent to countries other than the United States (RFP 6). But some of these RFPs, in particular RFPs 2 and 3, could potentially be sources of *Brady* evidence in the possession, custody or control of the United States.

The Ninth Circuit has held, however, that *Brady* does not apply in extradition cases. *See Merino v. U.S. Marshal*, 326 F.2d 5, 13 (9th Cir. 1963). Toledo asserts that this holding in *Merino* does not have much by way of an explanation, but regardless, it is a published opinion of the Ninth Circuit and therefore binding on this Court, as other lower courts in the Ninth Circuit have concluded. *See In the Matter of the Extradition of Ameen*, 378 F. Supp. 3d 902, 910 (E.D. Cal. 2019) ("In *Merino v. United States Marshal*, the Ninth Circuit held that *Brady* is not applicable to international extradition hearings like the one at bar."); *MacKenzie v. Cal. Attorney General*, 2016

---

[2] So in original. Presumably, Toledo means "between the Government of Peru" *and someone else*.

6

WL 5334479, *16 n.17 (C.D. Cal. April 11, 2016). Further, in *Kraiselburd*, the Ninth Circuit held that the extradition court properly limited discovery to the question of probable cause, rather than allowing blanket discovery, and the Court cited *Merino* in support of that holding, 786 F.2d at 1399, so *Merino* seems like good law that is supposed to affect the scope of discovery.

In addition, the Court does not agree that *Merino*'s rejection of *Brady* in the extradition context is unreasoned. In *Merino*, the appellant argued that he was denied due process of law because the extradition court had refused to authorize the taking of depositions in Mexico. 326 F.2d at 12. The Ninth Circuit explained that "the proceedings against appellant were in the nature of a preliminary hearing, and the purpose of the proceedings was *not to determine the guilt* of the appellant of the offenses set forth in the amended complaint beyond all reasonable doubt *but only to determine* that the offenses had been committed *and that there was probable cause* for belief that the appellant committed them." *Id*. (emphasis added). *Brady* famously held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material *either to guilt or to punishment*, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87 (emphasis added). *Merino* rejected *Brady* in the extradition context because extradition does not determine whether someone is guilty. In order to have a fair trial to determine if someone is guilty, you need to have both the inculpatory evidence and the exculpatory evidence; that's the essential holding of *Brady*. But in order to have a fair extradition hearing to determine if there is probable cause, you don't need all the exculpatory evidence; that's the essential holding of *Merino*. Evidence that is *so* exculpatory that it might negate a finding of probable cause is relevant to extradition, but as the Ninth Circuit held in *Kraiselburd*, discovery beyond that is unwarranted. 786 F.2d at 1399.

Some discussion of the Sixth Circuit's decisions in *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), and *In re Extradition of Drayer*, 190 F.3d 410 (6th Cir. 1999), is necessary. *Demjanjuk* was an extraordinary case in which the Sixth Circuit expanded *Brady* "to cover denaturalization and extradition cases where the government seeks denaturalization or extradition based on proof of alleged criminal activities of the party proceeded against." 10 F.3d at 353. There is some broad language in that opinion about *Brady* rights. *Drayer*, however, seemed to

7

walk this back, saying that "[t]his seemingly broad language must be read in the context of a case that involved an unusual set of circumstances. Because those circumstances are not present in this case, petitioner is not entitled to the broad relief he seeks. Specifically, in *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort." 190 F.3d at 414. But the more interesting sentence is on the following page of the *Drayer* opinion: "In accordance with *Demjanjuk*, the United States was obliged to turn over any exculpatory materials in its possession that would undercut a finding *that there was probable cause* to believe that petitioner committed the murder with which Canada had charged him." *Id*. at 415 (emphasis added).

If you think of *Demjanjuk* as extending full-on *Brady* rights to extradition and denaturalization proceedings – which is what *Demjanjuk* said it was doing – that does look inconsistent with the Ninth Circuit's decision in *Merino*. But *Drayer*'s spin is that *Demjanjuk* was really about the probable cause determination, and the Ninth Circuit has accepted that spin. *See Prasoprat v. Benov*, 421 F.3d 1009, 1015 (9th Cir. 2005) ("The evidence sought by Demjanjuk, however, related to whether he was in fact the individual who had committed the extraditable offense and thus concerned the probable cause determination," citing *Drayer*). On this reading, there is no inconsistency between the two Circuits because the Ninth Circuit has also blessed discovery into probable cause, though it has done so in the negative by holding that no discovery beyond probable cause is necessary. *See Kraiselburd*, 786 F.2d at 1399; *see also Yin-Choy*, 858 F.2d at 1407 ("The extradition court did not abuse its discretion in denying Oen's discovery motion. Oen has made no showing that the requested discovery would appreciably advance his negation or explanation of the government's showing of probable cause.").

Accordingly, this Court follows the Ninth Circuit's decision in *Merino* and rejects the application of *Brady* to extradition proceedings. This is not inconsistent with Sixth Circuit precedent, as construed by *Drayer* and *Prasoprat*, because the Court must still decide if Toledo's RFPs seek information that is relevant to probable cause.

The next issue is a procedural one. Some courts treat the obligation to produce evidence negating probable cause as essentially self-executing. *See Drayer*, 190 F.3d at 415. In other

8

words, they state that the government has this obligation, and then tell the government to go figure out what it means. *See In the Matter of the Extradition of Zhenly Ye Gon*, 2010 WL 169468, *4 (D.D.C. Jan. 8, 2010) ("I appreciate that the line between evidence that would negate probable cause and exculpatory evidence is difficult to draw . . . . It would be the kind of evidence that would convince any reasonable person that, despite the showing by the foreign government, there is no reasonable likelihood that the crime charged was committed or that the person charged committed it. [¶] I appreciate that this criterion may be more difficult to apply than to state."). The Ninth Circuit, however, requires the extraditee to "articulate" (*Kraiselburd*, 786 F.2d at 1399) or make a "showing" (*Yin-Choy*, 858 F.2d at 1407) that the requested discovery is relevant to probable cause. *See also Wroclawski v. Clinton*, 486 F. App'x 684, 685 (9th Cir. 2012) ("The magistrate judge did not abuse her discretion in denying Wroclawski's discovery request because the requested documents have not been shown to be relevant.")

Toledo has not done that. He has not articulated or explained what might be useful or relevant in any of the information he seeks. Concerning section A above, Toledo articulates a theory that the witnesses against him might have been coerced. But in his *Brady* argument, Toledo offers nothing. He seems to be engaging in a vast fishing expedition simply in the hope that there might be something good somewhere in the documents he seeks. If Federal Rule of Civil Procedure 26 applied to this case, and it doesn't, the RFPs for *Brady* evidence would fail the proportionality requirement because they seek large categories of information with no real explanation for why this discovery is worthwhile. What in Peru's judicial request to Andorra (RFP 6), assuming the United States even has this, is going to negate a finding of probable cause? How will the 2017 provisional extradition request to the U.S. (RFP 1) help Toledo show there is no probable cause? How will surveillance videos by the state of California since 2017 (RFP 9), if there are any, show that there is no probable cause that Toledo solicited bribes years earlier in Peru? These RFPs seek absolutely everything defense counsel was able to imagine might exist. They are not appropriately tailored toward seeking evidence that is relevant to probable cause. *See In re Zhenly Ye Gon*, 2010 WL 169468, at *3 ("[T]here is a complete disconnect between the breadth of the discovery sought and the only question presented: whether there is probable cause

9

to believe that respondent committed the crime charged. It is simply inconceivable that respondent needs all of the information he requested . . . simply in order to negate probable cause.").

Accordingly, Toledo's motion to compel these RFPs is **DENIED**, except as noted below. This denial is without prejudice to Toledo offering a better justification for requesting these materials, or to seeking other materials.

C. **Discovery Related to Ancillary Issues**

Toledo's third category of requested discovery is less well defined. He argues:

> As this Court is aware, the litigation in this case has not been limited to the issue of extradition. In particular, there has been extensive litigation concerning bail, with an evidentiary hearing scheduled for February 5, 2020. During the course of that litigation, the government has repeatedly relied upon information it obtained from its own investigation, including FBI interviews, financial records obtained via the search warrant, phone records, and declarations from sheriff's deputies. Based on documents that the government has recently provided, it appears that the government may also intend to rely upon recordings of jail phone calls and photographs taken of Dr. Toledo's jail cell. In addition, as noted above, the government has sought and obtained a court order for Dr. Toledo's jail medical records. If only as a matter of simple fairness, Dr. Toledo should be provided with the fruits of the government's search warrant, and all reports of its interviews, surveillance and investigation. In particular, it would be fundamentally unfair for Mr. Toledo to participate in an evidentiary hearing about bail when the government, and only the government, has access to Mr. Toledo's wife's financial records. (ECF No. 82 at 9)

This looks like a request for:

> RFP 7. "Copies of all materials seized from the home of Dr. Toledo during the July 2019 search and all material concerning Dr. Toledo and his wife obtained (1) through that search warrant or (2) as a result of materials obtained through that warrant or that search."
>
> RFP 9. "All reports of interviews, surveillance, and other investigation performed by the FBI, the United States Marshal Service, or other federal or state agencies of Dr. Toledo since Peru propounded its first request for arrest and extradition in 2017. This request includes a request for all communications and documentation of Dr. Toledo's conditions of confinement performed by the United States Marshals or San Mateo Sheriff's Department."

For RFP 7, the government says it has produced copies of all materials seized from Toledo's home during the July 2019 search. That leaves "all material concerning Toledo and his

10

wife obtained . . . *as a result* of materials obtained through that warrant or search" (emphasis added) but not in the search itself, i.e., fruits of that search. Presumably that would include the results of other search warrants where the seized material supported probable cause for the other warrant, or really anything the government learned about the Toledos that built on the seized material. That request is broad and vague, its breadth is not clearly tied to any specific theory of relevance, it seems to impact ongoing criminal investigations, and the Court does not really know what it would be ordering the government to produce if it ruled in Toledo's favor. Toledo's motion to compel is **DENIED** as to RFP 7.

The first sentence in RFP 9 is a sweeping request for investigatory information about Toledo over the past three years. The motion to compel provides no explanation for the relevance of these materials, and it is difficult to see how they are related to the ancillary issues that have been litigated in this proceeding.

Toledo justifies the second sentence of RFP 9 by arguing, correctly, that there have been factual disputes about the conditions of his confinement, and Judge Chhabria has held an evidentiary hearing on that issue. At oral argument, the Court asked if the request for documents concerning Toledo's conditions of confinement was still a live issue, given that the evidentiary hearing was yesterday. Toledo stated it was not a live issue and that he was not asking the Court to take action on the request at this time. Accordingly, the Court **DENIES** the motion as to RFP 9 without prejudice.

### D. The Search Warrant Affidavit

Finally, Toledo moves to compel:

> RFP 8. "An unredacted search warrant affidavit submitted in support of the search warrant issued for Dr. Toledo's home."

By way of background, on the same day that the government arrested Toledo on a complaint in this extradition proceeding, it also executed a search warrant at his home in connection with a separate federal criminal investigation into potential violations of 18 U.S.C. §§ 1956 and 1957. Toledo now seeks the affidavit that supported probable cause for the warrant, subject to a protective order if the Court deems it appropriate. He argues:

11

> Because a party aggrieved by a search and seizure of property has the right to challenge the lawfulness of the search and seizure and to seek the return of property unlawfully seized, it is generally accepted that a person whose property has been seized pursuant to a search warrant has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued. *In the Matter of the Search of Up Norther Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996); *accord In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298- 99 (S.D. Ohio 1995). The Rule 41(g) requirement that a court ruling on a motion to return property "must receive evidence on any factual issue necessary to decide the motion" would be obstructed if the party seeking the return of property were denied access to the information necessary to demonstrate the right to have the property returned. (ECF No. 82 at 10)

The government responds:

> Toledo asserts a legal right to the search warrant affidavit docketed in a different case number, under Fed. R. Crim. P. 41(g). However, Toledo's rights under Rule 41(g) relate only to a motion for return of property and are not a discovery tool in a case involving an extradition request from another country. As set forth above and in the attached declaration, Toledo's property has already been returned and/or copies provided to him. See Att. 1 ¶¶ 4-5. The out-of-district cases on which Toledo relies are neither binding nor relevant to this Court's determination. (ECF No. 83 at 19)

It is true that the search warrant was issued in a separate criminal proceeding and not as part of this extradition case, but Toledo argues, and the government does not deny, that the government is using materials obtained through that warrant in this proceeding. Thus, if the warrant was unlawful, it is prejudicing Toledo in this case. Forcing him to move to compel the affidavit in the separately docketed case number for the warrant is therefore an unnecessary formality.

The government's argument that a motion for the return of property is moot because the government has already given Toledo copies of what was seized does not make any sense. A return of property means both that Toledo would have it *and the government would not* (subject to "reasonable conditions to protect access to the property and its use in later proceedings," Fed. R. Crim. Proc. 41(g)).

The Court agrees with *Up North Plastics* that "[a] person whose property is seized pursuant to a search warrant, cannot decide whether he/she should make a motion under Rule 41 unless they know the basis upon which the search warrant was issued. To permit an affidavit

or any documents in support of a search warrant to remain sealed against examination by the person whose property was searched deprives him of the right secured by Rule 41 to challenge that search. There is nothing in Rule 41 to suggest that such evidence is intended to be taken in secret or without a full opportunity for the aggrieved person to argue that probable cause was lacking." 940 F. Supp. at 233.

At the hearing, the government stated that it needs to redact the affidavit to prevent the disclosure of sensitive information, and that if the affidavit is produced in redacted form, a protective order would be unnecessary. Courts have recognized that "[t]he right of a person whose property was seized to examine the affidavit upon which the warrant was issued is not absolute." *Id*. Whether the government has a "compelling interest," *id*., in any particular redaction cannot be determined in the abstract. Accordingly, the Court **ORDERS** the government to produce a redacted version of the affidavit within 30 days. This order is without prejudice to Toledo's ability to challenge any of the redactions.

**IT IS SO ORDERED.**

Dated: February 6, 2020

THOMAS S. HIXSON
United States Magistrate Judge

13