1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  KYLE F. WALDINGER (CABN 298752)
   Assistant United States Attorney
5
        450 Golden Gate Ave., 11th Fl.
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6830
7       Fax: (415) 436-7234
        Email:  Kyle.Waldinger@usdoj.gov
8
   CHRISTOPHER J. SMITH (VABN 75445)
9  Associate Director

10 REBECCA A. HACISKI (DCBN 996656)
   Trial Attorney
11
        Office of International Affairs
12      Criminal Division
        U.S. Department of Justice
13      1301 New York Avenue NW
        Washington, D.C. 20530
14      Telephone: (202) 616-2534
        Fax: (202) 514-0080
15      Email:  Rebecca.Haciski@usdoj.gov

16 Attorneys for the United States of America

17                      UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19                         SAN FRANCISCO DIVISION

20
   IN THE MATTER OF THE EXTRADITION   )   CASE NO.  3-19-71055 TSH
21 OF ALEJANDRO TOLEDO MANRIQUE        )
                                       )   MOTION TO REVOKE BAIL AND REMAND TO
22                                     )   CUSTODY
                                       )
23                                     )
                                       )
24 _____    )

25

26

27

28

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH

1    On September 28, 2021, the Court certified Peru's request for the extradition of Alejandro

2  Toledo Manrique ("Toledo").  *See* DE 188.  Toledo is currently on bail pursuant to an Order issued by

3  the Court on March 19, 2020.  DE 115, *In re Extradition of Toledo Manrique*, 445 F. Supp. 3d 421

4  (N.D. Cal. 2020).  Given the Court's decision on certification, Toledo is no longer eligible for bail

5  because the extradition statute, 18 U.S.C. § 3184, expressly requires detention of fugitives following

6  such a decision.  Moreover, even if bail were available, Toledo presents a significant risk of flight, and

7  no special circumstances justify his release.  Accordingly, the Court should revoke its March 19, 2020,

8  Order and remand Toledo to the custody of the United States Marshal pending the Secretary of State's

9  decision on Toledo's surrender to Peru and, if warranted, his transfer to the custody of Peruvian

10  authorities.

11    The government submits this Motion for the Court's consideration and is available for a hearing

12  thereon if the Court so wishes.  On September 30, 2021, the government advised Toledo's counsel of its

13  intent to file this Motion, and counsel requested to have until October 15, 2021, to respond.  Although

14  the government would prefer a speedier decision, it has no objection to providing counsel with sufficient

15  time to respond to this Motion.

16

17                                              **ARGUMENT**

**I.    18 U.S.C. § 3184 REQUIRES DETENTION OF A FUGITIVE AFTER THE**
18  **CERTIFICATION OF HIS EXTRADITABILITY**

19    The Court's authority to conduct international extradition proceedings is set forth in the federal

20  extradition statute, 18 U.S.C. § 3184.  In pertinent part, the statute requires that, after certifying a

21  fugitive as extraditable, the Court "*shall* issue [a] warrant for the commitment of the person so charged

22  to the proper jail, *there to remain* until such surrender shall be made."  (Emphasis added.)

23    As such, the mandatory language of Section 3184 expressly, and without exception, compels the

24  Court to commit a fugitive to custody for the duration of the time following certification through

25  surrender to the requesting country.  The statute thus plainly renders bail unavailable to a fugitive who

26  has been certified as extraditable.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n

27  interpreting a statute a court should always turn to one cardinal canon before all others. . . . [C]ourts

28  must presume that a legislature says in a statute what it means and means in a statute what it says

1   there."); *cf., e.g., In re Extradition of Leiva*, No. 16-23468-CV, 2017 WL 4366290, at *9 (S.D. Fla. Sept.

2   29, 2017) (certifying former Colombian Cabinet member for extradition to Colombia, and revoking his

3   release on bail without analysis).

4

5   **II.     THE "SPECIAL CIRCUMSTANCES" TEST DOES NOT APPLY ONCE THE COURT
           CERTIFIES EXTRADITION**

6          In contrast to its express provision for post-certification detention, Section 3184 is silent on the

7   issue of whether a fugitive must be detained prior to certification.  However, the decision in *Wright v.*

8   *Henkel*, 190 U.S. 40 (1903), along with the subsequent evolution of the "special circumstances" test,

9   establish the conditions under which a fugitive may be released on bail during the pre-certification stage

10  of an extradition proceeding.  *Wright* was a pre-certification case in which a fugitive applied for habeas

11  relief following the denial of his bail application, but prior to a finding of extraditability.  190 U.S. at 57

12  (explaining that "the writ was applied for in this instance before the commissioner had entered upon the

13  examination [of whether the fugitive was extraditable]").  In *Wright*, the Supreme Court held that special

14  circumstances could permit the granting of bail notwithstanding the absence of a statute specifically

15  authorizing bail.  *Id.* at 63.

16         Notably, the Court did not purport to extend its holding to the post-certification stage of

17  extradition and, in fact, recognized that doing so would be "inconsistent" with the federal extradition

18  statute.  *See id.* at 62 ("[Section] 5270 of the Revised Statutes [the predecessor of the current extradition

19  statute] . . . is inconsistent with its allowance [of bail] after committal, for it is there provided that, if he

20  finds the evidence sufficient, the commissioner or judge 'shall issue his warrant for the commitment of

21  the person so charged to the proper jail, there to remain until such surrender shall be made.'").  The

22  Court explained that:

23         The demanding government, when it has done all that the treaty and the law require it to
           do [as confirmed upon certification], is entitled to the delivery of the accused on the issue
24         of the proper warrant, and the other government is under obligation to make the
           surrender; an obligation which it might be impossible to fulfil if release on bail were
25         permitted.  The enforcement of the bond, if forfeited, would hardly meet the international
           demand; and the regaining of the custody of the accused obviously would be surrounded
26         with serious embarrassment.

27  *Id*.  Thus, while *Wright* may allow for the granting of pre-certification bail, it does not undermine the

28  / / /

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                                                    2

1   prohibition on post-certification bail, as governed by the "shall issue" and "there to remain" language of

2   Section 3184.[1]

3

4   **III.   U.S. FOREIGN INTERESTS SUPPORT DETENTION OF A FUGITIVE FOLLOWING CERTIFICATION**

5          The prohibition against bail following certification of extraditability is further supported by the

6   United States' interests in meeting its treaty obligations.  Specifically, the ability of the United States to

7   deliver fugitives pursuant to extradition requests made by its treaty partners has significant international

8   law implications.  Just as the United States expects other countries to honor their obligation to return

9   fugitives when the applicable treaty's requirements have been met, other countries similarly expect the

10  United States to honor its reciprocal obligation to extradite fugitives.  The United States obviously could

11  not fulfill this obligation if a fugitive were to flee after being released on bond, an event that becomes all

12  the more likely once a fugitive's surrender becomes more imminent.  *See Wright*, 190 U.S. at 62.  It is

13  important that the United States be regarded in the international community as a country that honors its

14  agreements in order to be in a position to demand that other countries meet their obligations to the

15  United States.  Such reciprocity would be defeated if a fugitive fled after being released on bond.  *See*

16  *Jimenez v. Aristiguieta*, 314 F.2d 649, 653 (5th Cir. 1963) ("No amount of money could answer the

17  damage that would be sustained by the United States were the appellant to be released on bond, flee the

18  jurisdiction, and be unavailable for surrender, if so determined.  The obligation of this country under its

19  [extradition] treaty . . . is of paramount importance."); *United States ex rel. McNamara v. Henkel*, 46

20  F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of forfeited bail to foreign nation "is ridiculous, if not

21  insulting").

22          Moreover, general considerations warranting the granting of bail to a fugitive before certification

23  are no longer compelling after certification, when all that remains in the extradition process is for the

24

25          [1] To the extent that in a number of cases, certain courts, including the Ninth Circuit, have
26  entertained bail requests after a certification of extraditability, the government respectfully submits that
    those cases incorrectly ignored the distinction between the pre- and post-certification stages of
27  extradition, as well as the limited applicability of the special circumstances test to only pre-certification
    proceedings.  *See, e.g.*, *United States v. Salerno*, 878 F.2d 317 (9th Cir. 1989) (applying special
28  circumstances test, albeit adversely to the fugitive, when considering fugitive's motion for bail during
    appeal of certification order); *Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977) (same); *Nezirovic v.
    Holt*, 990 F. Supp. 2d 594, 598-99 (W.D. Va. 2013) (citing cases allowing post-certification release).

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                                          3

1   Secretary of State to decide whether to surrender the fugitive.  Pursuant to 18 U.S.C. § 3188, a fugitive

2   may seek to be released from custody if he is not surrendered within two calendar months of the final

3   adjudication of the certification of his extradition.  Thus, although the fugitive's detention may be

4   prolonged by his attempt to obtain habeas corpus relief from the certification, the prospect of indefinite

5   detention, which may exist prior to certification, is no longer an issue.

6
7   **IV.    EVEN IF THE SPECIAL CIRCUMSTANCES TEST DID APPLY, TOLEDO CANNOT SATISFY IT**

8          Even if bail were available after certification, Toledo cannot satisfy the exacting standard for

9   obtaining bail established under *Wright*.  In order to overcome the general presumption against bail

10  under *Wright*, a fugitive has the burden of demonstrating that: (1) he will not flee or pose a danger to the

11  community, and (2) there are "special circumstances" justifying his release.  *See, e.g.*, *In re Extradition*

12  *of Kirby*, 106 F.3d 855, 862-63 (9th Cir. 1996) ("[T]he release on bail of potential extraditees . . . [must]

13  be examined to determine *both* the sufficiency of bail to assure that the performance of this court's

14  duties will not be aborted by flight of the potential extraditee, *and* its propriety under *Wright v.*

15  *Henkel*.") (emphasis added); *In re Extradition of Manrique*, 442 F. Supp. 3d 1172, 1175 (N.D. Cal. Mar.

16  4, 2020).  Neither prong is met here.

17         As this Court previously found, "Toledo is a flight risk." *Manrique*, 445 F. Supp. 3d at 423.

18  Toledo's incentive to flee has now only increased, given that the Court has certified his extradition, and

19  all that presently remains before he may be returned to Peru is the Secretary's decision on his surrender.[2]

20  Moreover, it is no longer as true that "international travel is hard" due to the COVID-19 pandemic, as it

21  was at the time the Court ordered Toledo's release on bail, *id.*, given that many countries have since

22  eased their travel restrictions.  Thus, Toledo's flight risk is no longer mitigated by the pandemic as it

23  may have been previously.

24         Furthermore, even if Toledo could demonstrate that he is not a flight risk, he cannot demonstrate

25  the existence of "special circumstances."  *See In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th

26  Cir. 1992).  In its March 19, 2020, Order, the Court found that the special circumstance justifying

27

28         [2] The government understands that Toledo intends to file a petition for a writ of *habeas corpus* challenging the Court's certification decision.

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                                                                   4

1  Toledo's release was his risk and vulnerability in contracting COVID-19 while in jail.  *Manrique*, 445 F.

2  Supp. 3d at 422.  However, since April 15, 2021, all adults in California have been eligible for the

3  COVID-19 vaccine,[3] which mitigates those concerns.  Accordingly, the special circumstance underlying

4  Toledo's release no longer exists.  *See also, e.g.*, *In re Extradition of Lyons Muskus*, No. 21-21781-MC,

5  2021 WL 3173340, at *10 (S.D. Fla. July 27, 2021) ("This is not the first time that an extraditee has

6  attempted to use the coronavirus pandemic as a special circumstance to seek release.  Courts have

7  repeatedly rejected this argument . . . .  However, even putting aside these cases and the special

8  circumstances analysis, the harm Mr. Lyons raises is not as detrimental as he makes it out to be because

9  all adults in Florida have been eligible for the COVID-19 vaccine since April 5, 2021."); *In re*

10  *Extradition of Ahmed*, No. MJ-20-08033-PHX-MTM, 2021 WL 2012666, at *7 (D. Ariz. May 20, 2021)

11  ("Courts, generally, have declined to find COVID-19 a special circumstance.").

12      This case is now in a fundamentally different posture than it was over a year-and-a-half ago

13  when Toledo was released from custody.  Not only has the Court certified Toledo for extradition and

14  rejected his arguments in defense thereof, but the circumstances supporting his release have also

15  changed.  Accordingly, Toledo should no longer be afforded release on bail.

16                                    **CONCLUSION**

17      For the foregoing reasons, the Court should revoke its Order releasing Toledo on bail and should

18  remand him to the custody of the United States Marshal pending the Secretary of State's decision on

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27

28      [3] *See* Office of Governor Gavin Newsom, Press Release, *All Californians 16+ Now Eligible for COVID-19 Vaccines* (Apr. 15, 2021), https://www.gov.ca.gov/2021/04/15/all-californians-16-now-eligible-for-covid-19-vaccines/.

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                                          5

1    Toledo's surrender to Peru and, if warranted, his transfer to the custody of Peruvian authorities.

2

3    DATED:  October 1, 2021                Respectfully submitted,

4                                 STEPHANIE M. HINDS
                                Acting United States Attorney

5

6                                     /s/

7                                 KYLE F. WALDINGER
                                Assistant United States Attorney

8                                 CHRISTOPHER J. SMITH

9                                 Associate Director

10                                 REBECCA A. HACISKI
                                Trial Attorney

11                                 Office of International Affairs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                    6