GEOFFREY A. HANSEN
Acting Federal Public Defender
GRAHAM ARCHER
MARA K. GOLDMAN
Assistant Federal Public Defenders
1301 Clay Street, Suite 1350N
Oakland, CA 94612
Telephone:     (510) 637-3500
Facsimile:       (510) 637-3507
Email:             Graham_Archer@fd.org

Counsel for ALEJANDRO TOLEDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE. | Case No. 19-mj-71055 MAG (TSH)<br><br>**OPPOSITION TO MOTION TO REVOKE BAIL AND REMAND TO CUSTODY** |

## INTRODUCTION

On March 19, 2020, this Court granted Dr. Toledo's request to be released from custody.  Now, more than a year and a half later, the government moves the Court to reverse its decision.  The government contends that 18 U.S.C. § 3184 requires remand once an extradition has been certified, but courts have universally rejected this argument.  Alternatively, the government argues that there are no longer any special circumstances to justify Dr. Toledo's release on bail because adults are now eligible to receive the vaccine.  The availability of the vaccine is an unquestionably positive development – and one that Dr. Toledo has gratefully taken advantage of – but it does not change the fact that Dr. Toledo is a 76-year-old man in poor health who remains at great risk of dying from COVID-19 if he is returned to custody.  Finally, the government argues that Dr. Toledo is a flight

risk. But, as this Court correctly concluded when it released Dr. Toledo, any risk can be addressed through a combination of stringent conditions of release. Dr. Toledo has made no attempt to flee during the year and a half that he has been released, nor has he done anything to suggest that he will flee now. For all of these reasons, the government's motion should be denied.

**ARGUMENT**

**I. This Court Has the Authority to Allow Dr. Toledo to Remain Out of Custody**

The government contends that bail is no longer permitted once the extradition has been certified to the Secretary of State. At that point, the government argues, the extraditee must be remanded because 18 U.S.C. § 3184 provides that the court "'*shall* issue [a] warrant for the commitment of the person so charged to the proper jail, *there to remain* until such surrender shall be made.'" *See* Govt. Mot. at 1 (quoting 18 U.S.C. § 3184) (emphasis supplied by the government). This argument has been soundly rejected by federal courts, including but not limited to courts in the Ninth Circuit, because it is "at odds with *Wright v. Henkel*, 190 U.S. 40, 63 (1903)." *See* Order Denying Motion for Reconsideration of Bail, *In the Matter of the Extradition of Israel Ramirez Luna*, No. 16-xr-90095 NC (N.D. Cal. March 30, 2017) (hereinafter "*Ramirez Luna*"), attached hereto as Exhibit A, at 1.

In *Wright*, the Supreme Court "refused to strip courts of power to grant bail in extradition proceedings." *Id.* at 1 (citing *Wright*, 190 U.S. at 63). The *Wright* Court analyzed the precursor to § 3184, which contained the same "shall issue" and "there to remain" language that the government relies on here. *See Wright*, 190 U.S. at 63. Despite acknowledging that bail was "inconsistent" with that language, the Court concluded:

> We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief.

*Id.* In other words, "*Wright* held that, despite the statutory language, courts have inherent power to grant bail in appropriate extradition cases." *Garcia v. Benov*, No. CV 08-08819 MMM, 2009 WL 6498194, *5 n.23 (C.D. Cal. Apr. 13, 2009).

The government attempts to distinguish *Wright* on the ground that it involved a pre-

OPPOSITION TO MOTION TO REVOKE BAIL
NO. 19-MJ-71055 MAG (TSH)

2

1 certification bail request, rather than a post-certification request. But *Wright* "drew no analytical
2 distinction between pre- and post-certification bail requests," *id.,* and "subsequent case law has made
3 clear that the special circumstances test is applicable in both the pre- and post-certification stages of
4 extradition," *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1005 (D. Ariz. 2009).

Three circuits, including the Ninth Circuit, have implicitly rejected the government's argument by applying *Wright*'s special circumstances test to post-certification proceedings. *See Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (applying *Wright* to determine whether an individual whose extradition had been certified was entitled to bail pending appeal); *United States v. Beaulieu*, 554 F.2d 1 (1st Cir. 1977); *Hu Yau-Leung v. Soscia*, 649 F.2d 914 (2d Cir. 1981).[1]

Moreover, the government's argument "has been expressly repudiated by several federal courts." *Nezirovic v. Holt*, 990 F. Supp. 594, 598-99 (W.D. Va. 2013) (relying on "the plain weight of authority" to hold that "*Wright v. Henkel* allows a court to release an extraditee on bond pending habeas review following certification of the extradition by a magistrate judge"). In particular, district courts in the Ninth Circuit have consistently held that *Wright* applies equally to pre- and post-certification proceedings. *See, e.g., Matter of Extradition of Blasko,* No. 1:17-mc-00067-DAD-SAB, 2019 WL 498986, *4 (E.D. Cal. Feb. 8, 2019) ("The Court finds that it has the authority to release an extraditee on bail after certification of extraditability."); *Ramirez Luna* at 2 ("[T]he Court finds that it retains the ability to grant or deny bail even after certifying Ramirez Luna's extradition"); *Matter of Extradition of Gonzalez*, No. 90-mj-70576-DMR, 2015 WL 1409327, *5 (N.D. Cal. March 27, 2015) (noting that "courts have time and again considered bail requests after a judicial finding of extraditability," and "agree[ing] with courts that have concluded that they have authority to consider bail in international extradition cases even after a certificate of extraditability has issued, notwithstanding the language of § 3184"); *Wroclawski*, 634 F. Supp. 3d at 1005 (granting bail pending resolution of post-certification habeas petition); *Garcia*, 2009 WL 6498194 at *5 n.23 ("The court rejects respondent's argument that the courts are without power to grant bail following

---

[1] In a footnote, the government concedes that "in a number of cases, certain courts, including the Ninth Circuit have entertained bail requests after certification of extraditability," but suggests that these decisions should be disregarded because they "incorrectly ignored the distinction between the pre- and post-certification stages of extradition." *See* Govt. Mot. at 3 n.1.

certification of a request for extradition."); *see also United States v. Kollmar*, No. 19-mj-70677-MAG-1 (KAW), 2021 WL 179606, *11 (N.D. Cal. Jan. 19, 2021) (ordering that extraditee shall remain out on bail after certification).[2]  In short, it is "well-settled" that "an extraditee may be granted bail – both before or after certification of extradition – upon a showing of special circumstances." *Kapoor*, 2012 WL 2374195 at *3.

## II.     Special Circumstances Continue to Justify the Court's Decision to Grant Bail

In March of 2020, this Court determined that the risk that Dr. Toledo will contract COVID-19 while in jail was a special circumstance warranting bail.  *Matter of Extradition of Toledo Manrique*, 445 F. Supp. 3d 421 (N.D. Cal. 2020).  The government contends that this special circumstance "no longer exists" because all adults in California are eligible for the COVID-19 vaccine.  *See* Govt. Mot. at 5.  Dr. Toledo has done everything in his power to avoid contracting COVID-19, including getting the vaccine as soon as he was eligible.  Unfortunately, it is increasingly evident that "the COVID risks remain real for vaccinated elderly people."  David Leonhardt, "Covid and Age," *New York Times*, Oct. 12, 2021 (reporting that unvaccinated children are at less risk of serious COVID-19 illness than vaccinated 70-year-olds).[3]  According to the Centers for Disease Control (CDC), as of October 4, 2021, more than 30,000 fully vaccinated people have developed breakthrough cases of COVID-19.  Nearly 17,000 of those people have been hospitalized, and 6,617 have died.  *See* CDC, *COVID-19 Vaccine Breakthrough Case Investigation and Reporting*.[4]  Particularly concerning, people aged 65 and older account for 86% of those deaths, and 67% of the hospitalizations.  *See id.*

That risk is significantly increased for people who are incarcerated.  According to a comprehensive study of COVID-19 in state and federal prisons, inmates are between 3.3 and 5 times more likely to become infected with the virus and 2.5 to 2.7 times more likely to die from it.  *See* JAMA, *COVID-19 Incidence and Mortality in Federal and State Prisons Compared with the US*

---

[2] Courts in other Circuits have reached the same conclusions.  *See, e.g., In re Extradition of Kapoor*, No. 11-M-456 (RML), 2012 WL 2374195, *2 (E.D.N.Y. June 22, 2013); *Nezirovic*, 990 F. Supp. 2d at 599; *In re Extradition of Harshbarger*, No. 08-mj-00109, 2009 WL 702925 *3 (M.D. Penn. Mar. 12, 2009).

[3] available at https://www.nytimes.com/2021/10/12/briefing/covid-age-risk-infection-vaccine.html.

[4] available at cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html.

*Population, April 5, 2020, to April 3, 2021*, Oct. 6, 2021.[5] At the Santa Rita Jail, only 25% of the inmates and 53.6% of the staff are fully vaccinated. *See* Declaration of Caitlin Costello, attached hereto as Exhibit B, at ¶¶ 2-3. Santa Rita currently has 4 inmates and 4 staff members/contractors with COVID-19; since the pandemic began, there have been 741 inmates with COVID-19 and 164 staff members. *See id.* at ¶ 3. In the San Mateo County jails (Maguire and Maple Street), there are currently 4 cases of COVID-19 (3 inmates and 1 staff member); there have been a total of 148 positive cases among inmates and Correctional Health staff. *See id.* at ¶ 4.

Even without the continuing danger from COVID-19, sending Dr. Toledo back to jail would pose a terrible risk to his mental and physical health. Dr. Toledo's time in solitary confinement had devastating and long-lasting effects, which he is still working to overcome. *See* Declaration of Mara K. Goldman, submitted under seal as Exhibit C, at ¶ 2. According to his therapist, a return to custody would be "extremely detrimental," and create an increased risk that his mental health would deteriorate. *See id.* Dr. Toledo's physical health is also in decline. In July he suffered a traumatic fall and sustained a complex fracture of the right shoulder, requiring major surgery and replacement of the joint with a titanium prosthesis. *See id.* at ¶ 3 & Attachment 1. He continues to require a carefully monitored regimen of pain management and physical therapy to regain function in his right upper extremity. *See id.* This is in addition to his other, longstanding medical problems. *See id.* at ¶ 4 & Attachment 2. At the same time, Dr. Toledo's wife is suffering from severe degenerative hip osteoarthritis and is in need of hip replacement surgery. *See id.* at ¶ 5 & Attachment 3. During the recovery period following surgery, she will be dependent on Dr. Toledo's help in performing basic daily activities. *See id.*; *cf. Ramirez Luna* at 2 (denying government's motion for remand based, in part, on fact that extraditee's daughter "still suffers from a serious heart condition and she continues to require her father's care").

### III. Dr. Toledo Is Not a Flight Risk

Finally, the government argues that Dr. Toledo is a flight risk who should be remanded because the United States has an obligation to "deliver fugitives pursuant to extradition requests," and this

---

[5] available at https://jamanetwork.com/journals/jama/fullarticle/2784944.

country "obviously could not fulfill this obligation if a fugitive were to flee after being released on bond." Govt. Mot. at 3.  As this Court has noted, however, "the United States' treat obligation to Peru" is "to deliver [Dr. Toledo] to Peru *alive*." *Toledo Manrique*, 445 F. Supp. 3d at 422 (emphasis added).  In its March 2020 Order, the Court determined that Dr. Toledo was a flight risk, but that this risk could be reasonably addressed through a combination of stringent conditions. Time has proven the Court right.  Dr. Toledo has been out of custody for more than a year and a half.  During that time, he has made no attempt to leave the district, much less flee the country.  The friends who posted money and property remain confident that Dr. Toledo will not flee.  Pretrial Services has agreed to a series of lessened restrictions, which would not have happened if there were a concern about the ability of these conditions to address the hypothetical risk of flight.  The only real change is that it is now evident to everyone that Dr. Toledo does not have millions of dollars in bribes stashed away.[6]

## CONCLUSION

In keeping with both the governing authority and the practice in this District, the Court has not lost its authority to make a detention determination after issuing a certificate of extraditibility.  The circumstances warranting Dr. Toledo's release have not, as the government argues, gone away.  Because of Dr. Toledo's significant ongoing health problems, the outbreaks of COVID-19 at local detention facilities, and the additional information before the Court through the litigation of the probable cause motion, the Court should deny the government's motion for remand.

Dated: October 15, 2021                    Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender

          /S
GRAHAM ARCHER
MARA K. GOLDMAN
Assistant Federal Public Defenders

---

[6] The government asserts, without support, that Dr. Toledo is more likely to flee now that "all that presently remains before he may be returned to Peru is the Secretary's decision on his surrender." Govt. Mot. at 4.  But as the government acknowledges in a footnote, Dr. Toledo is filing a petition for a writ of habeas corpus. *See id.* at n.2.  If that petition is denied, he intends to appeal to the Ninth Circuit.  In short, extradition is far from imminent.

IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE

19-mj-71055 MAG (TSH)

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ISRAEL RAMIREZ LUNA | Case No. 16-xr-90095 NC<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION OF BAIL**<br><br>Re: Dkt. No. 61 |

Before the Court is the government's motion for reconsideration of bail. On March 17, 2017, the Court certified Ramirez Luna's extradition, and the government now moves for the Court to reconsider its April 7, 2016, order granting Ramirez Luna's motion for bail. The Court finds that (1) 18 U.S.C. § 3184 does not require the Court to revoke bail; and (2) the special circumstances justifying his release over the past year have not changed.

First, as to the government's argument that 18 U.S.C. § 3184 mandates that the Court order Ramirez Luna detained, the Court finds this argument at odds with *Wright v. Henkel*. 190 U.S. 40, 63 (1903). The Court in that case refused to strip courts of power to grant bail in extradition proceedings. *Id*. District courts in this circuit have found that they may consider motions for bail even after certifying an extradition. *USA v. Matter of Extradition of Gonzalez*, No. 09-mj-70576 DMR, 2015 WL 1409327, at *4-5 (N.D. Cal. Mar. 27, 2015); *Garcia v. Benov*, No. 08-cv-07719 MMM CWX, 2009 WL 6498194, at *5

Case No. 16-xr-90095 NC

(C.D. Cal. Apr. 13, 2009). Thus, the Court finds that it retains the ability to grant or deny bail even after certifying Ramirez Luna's extradition.

Second, the Court finds that the special circumstances that existed when it granted Ramirez Luna's motion for bail in April 2016 still exist today. *United States v. Salerno*, 878 F.2d 317, 317 (9th Cir. 1989) (citing *Wright*, 190 U.S. at 63). Ramirez Luna still enjoys the exceptional support of his community in Willits, California, and his daughter, Naomi, still suffers from a serious heart condition and she continues to require her father's care. *See* Dkt. No. 62 at 8 (letter from Dr. Howard Rosenfeld to the Court). Lastly, the Court notes that Ramirez Luna has complied with the strict conditions of his release throughout the past year, including GPS electronic location monitoring and posting his home as collateral to secure the $100,000 bond. The Court does not consider Ramirez Luna a flight risk.

Thus, the Court DENIES the government's motion for reconsideration of its order releasing Ramirez Luna on bail.

**IT IS SO ORDERED.**

Dated: March 30, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 16-xr-90095 NC    2

*IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE*

19-mj-71055 MAG (TSH)

# EXHIBIT B

GEOFFREY A. HANSEN
Acting Federal Public Defender
GRAHAM ARCHER
MARA K. GOLDMAN
Assistant Federal Public Defenders
1301 Clay Street, Suite 1350N
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:   (510) 637-3507
Email:         Graham_Archer@fd.org

Counsel for ALEJANDRO TOLEDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE. | Case No. 19-mj-71055 MAG (TSH)<br><br>**DECLARATION OF CAITLIN COSTELLO** |

I, Caitlin Costello, hereby declare:

1. I am a Paralegal for the Federal Public Defender for the Northern District of California. Our office has been appointed to represent Alejandro Toledo in the above-captioned case.

2. On October 12, 2021, I was advised by a representative of the U.S. Marshal's Service that 53.6% of the employees at Santa Rita Jail (397 out of 740) are fully vaccinated, and that 49.4% of the employees at the Alameda County Sheriff's Department (841 out of 1704) are fully vaccinated.

3. According to the Alameda County Sheriff's Department COVID-19 Update for October 13, 2021, https://www.alamedacountysheriff.org/about-us/covid-19-stats, 25% of the inmates at Santa Rita Jail (550 of 2200) were fully vaccinated as of October 8, 2021. An additional 52 inmates were partially vaccinated. There are currently 4 positive cases of COVID-19 at the Santa Rita Jail – 3

inmates and 1 staff/contractor.  Overall, Santa Rita Jail has had 905 positive cases of COVID-19: 741 inmates and 164 staff/contractors.

4. On October 8 and October 12, 2021, I was advised by a representative of San Mateo County Correctional Health Services that there are currently 4 cases of COVID-19 (three inmates and one staff member) in the San Mateo County Jails (Maguire and Maple Street).  There have been a total of 148 positive cases (142 inmates and 6 Correctional Health staff members). Those positive COVID-19 cases do not include cases of staff employed by the San Mateo County Sheriff's Office.

I declare under penalty of perjury that the foregoing is true and correct, except for those matters stated on information and belief, and as to those matters, I am informed and believe them to be true.

Executed this 15th day of October, 2021, at San Jose, California.

       /s Caitlin Costello
      CAITLIN COSTELLO

IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE

19-mj-71055 MAG (TSH)

# EXHIBIT C
# (FILED UNDER SEAL)