STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Ave., 11th Fl.
    San Francisco, California 94102-3495
    Telephone: (415) 436-6830
    Fax: (415) 436-7234
    Email: Kyle.Waldinger@usdoj.gov

CHRISTOPHER J. SMITH (VABN 75445)
Associate Director

REBECCA A. HACISKI (DCBN 996656)
Trial Attorney

    Office of International Affairs
    Criminal Division
    U.S. Department of Justice
    1301 New York Avenue NW
    Washington, D.C. 20530
    Telephone: (202) 616-2534
    Fax: (202) 514-0080
    Email: Rebecca.Haciski@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE | CASE NO. 3-19-71055 TSH<br><br>REPLY IN SUPPORT OF MOTION TO REVOKE BAIL AND REMAND TO CUSTODY |

REPLY IN SUPPORT OF MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH

In response to the government's motion to revoke bail, Alejandro Toledo Manrique ("Toledo") fails to offer any valid justification for his continued release. *See* DE 192. Because he has lost his challenges to the certification of his extradition, 18 U.S.C. § 3184 mandates that he must "remain" in "jail" pending the Secretary of State's decision on his surrender to Peru. While Toledo disagrees with a plain reading of Section 3184, he provides no affirmative explanation as to what else the statutory language means, or what else the Supreme Court could have meant in confirming that the language of the statute is "inconsistent" with bail "after committal" for extradition. *Wright v. Henkel*, 190 U.S. 40, 62 (1903). Furthermore, Toledo's argument that his release is warranted under the special circumstances test, even if it applied, is similarly meritless. Accordingly, the Court should grant the government's motion.

## I. TOLEDO IS INCORRECT THAT THIS COURT HAS THE AUTHORITY TO ALLOW HIM TO REMAIN OUT OF CUSTODY

In contending that he may remain on bond even following this Court's certification of his extradition, Toledo fails to offer any analysis of Section 3184 or any compelling reason why the clear statutory mandate is not controlling. Instead, he misapprehends the Supreme Court's analysis of the statute in *Wright*. 190 U.S. at 62.[1] In that case, the Court expressly distinguished between "release pending examination" of a request for a fugitive's extradition, and release "after [the fugitive's] committal" for extradition. *See id.* The Court understood that no statute "provid[ed] for admission to bail in cases of foreign extradition" or forbid *pre-certification* release in such cases, even though "the same reasons which induced the language used in the statute [regarding remaining in jail following certification] would seem generally applicable to release pending examination." *See id.* Accordingly, the Court's provision for the possibility of granting bail based upon special circumstances is limited to pre-certification cases, where Section 3184 is silent.

Indeed, upon consideration of a similar statute, the Supreme Court recently affirmed a mandate

---

[1] Toledo is also incorrect (DE 192 at 1) that "courts have universally rejected" the argument that Section 3184 mandates post-certification detention. *See In re the Matter of the Extradition of Markey*, No. 3:09-MJ-75 CAN, 2010 WL 610975, at *4 (N.D. Ind. Feb. 18, 2010) ("The law is clear, and the parties agree, that this Court has no authority to release Markey after it issues the certificate of extraditability. Title 18 U.S.C. § 3184 requires that this Court issue a warrant for the commitment of Markey.").

REPLY IN SUPPORT OF MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                         1

for detention. In *Jennings v. Rodriguez*, the Court confronted a provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), which states that the Attorney General "shall take [certain aliens] into custody." 138 S. Ct. 830, 846 (2018). The Court held that this statutory language is "clear" and "expressly prohibits release from . . . detention," *id*., that is, it precludes an alien's "release[] on bond," despite the lack of any explicit statutory reference to "bond," *id*. at 850-51. The Court also explained that the notion of "detention" should be understood "in contradistinction to 'bail.'" *Id*. at 850 n.7. Section 3184's mandate that a fugitive "remain" in "jail" is even clearer than Section 1226(c)'s mandate; the inclusion of any additional language in the statute regarding the unavailability of "bail" would be redundant.

Thus, particularly given the Supreme Court's decision in *Rodriguez*, this Court should adopt the natural reading of Section 3184 as requiring detention following certification. None of the cases Toledo cites provides a valid basis for ignoring the plain language of the statute or the *Wright* Court's admonition in that the statute is "inconsistent" with bail following certification. This Court need go no further to order Toledo's remand.

## II.  TOLEDO IS INCORRECT THAT HE IS NOT A FLIGHT RISK AND THAT SPECIAL CIRCUMSTANCES JUSTIFY HIS RELEASE

Even if detention were not mandated by statute, it would nonetheless be warranted under the special circumstances test. Toledo fails to meet his burden of satisfying either prong of that test in his response.

*First*, Toledo's claim that his risk of flight is largely unchanged from when he was first released on bail is misguided. Given this Court's certification, one step in the process for extraditing him is now unquestionably complete. This is true even if Toledo files a *habeas* petition—for which the scope of review is limited—challenging the certification. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("[H]abeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty."). As such, "given the change of circumstances precipitated by the certification of the extradition, [Toledo is] now a greater flight risk than when bail was previously extended." *Arias Leiva v. Wilson*, No. 17-

23938-CIV, 2018 WL 9662548, at *6 (S.D. Fla. Aug. 27, 2018) (rejecting fugitive's argument that he was not a flight risk because he was on bail prior to the certification of the request for his extradition).[2]

*Second*, none of the circumstances Toledo identifies rises to the level of justifying his release under the exacting standard established in *Wright*. 190 U.S. at 63. Although Toledo cites various general statistics regarding COVID-19 vulnerability (DE 192 at 4-5), he cites no law supporting the notion that his significantly reduced risk of contracting the disease, and even smaller risk of needing hospitalization as a result thereof, nevertheless still amounts to a special circumstance. *Cf.* CDC, *COVID-19 Risks and Vaccine Information for Older Adults* ("Getting vaccinated prevents severe illness, hospitalizations, and death. People 65 and older who received both doses of either Pfizer or Moderna vaccines showed a 94% reduced risk of COVID-19 related hospitalization.").[3]

The other health concerns Toledo raises likewise do not rise to the level of special circumstances. The Court already rejected Toledo's claim that the risk to his mental health based on the previous conditions of his confinement justifies his release. DE 100 at 5-7 (Chhabria, J.). Separately, Toledo's claim that his physical health has declined while out of custody (DE 192 at 5) does not provide a valid basis to prevent his return to custody. While he identifies various health issues from which he claims to suffer, he fails to offer evidence that any of them is so serious as to be unmanageable while in custody. Accordingly, they do not justify his release. *See, e.g.*, *United States v. Bowman*, No. 19-MJ-05089-JLB-1, 2020 WL 835342, at *3 (S.D. Cal. Feb. 20, 2020) ("history of cancer and serious health issues [emphysema and COPD], for which [the fugitive] is taking medication," is not a special circumstance); *In re Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1301 (S.D. Fla. 2017) (rejecting fugitive's argument that his "health, age [66 years old], recent surgery, medications, and the stress of detention warrant bail"); *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 601 (W.D. Va. 2013)

---

[2] Toledo's claim (DE 192 at 6) that "[t]he only real change is that it is now evident to everyone that Dr. Toledo does not have millions of dollars in bribes stashed away" is contrary to the findings of this Court. *See* DE 188 at 28 (rejecting Toledo's argument that "both the collusion and the money laundering schemes are implausible because the large majority of the bribe money never made its way to him in the sense of being deposited in a bank account in his name or used to purchase real estate titled to him"); *id.* at 29 ("Maiman's taking his own substantial cut of the bribe money still left plenty for Toledo . . . . Maiman testified that he received a total of $34 million in funds, and $21 million of that went to Toledo."); *id.* ("Here, everyone agrees that Odebrecht was trying to bribe Toledo, not Maiman.").

[3] *Available at* https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Oct. 18, 2021).

REPLY IN SUPPORT OF MOTION TO REVOKE BAIL AND REMAND TO CUSTODY
CASE NO. 3-19-71055 TSH                                                            3

("suffer[ing] from back pain, anxiety and post traumatic stress disorder which is exacerbated by his incarceration" is not a special circumstance); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993) (need for specialized diet and exercise is not a special circumstance); *cf. Salerno v. United States*, 878 F.2d 317, 317-18 (9th Cir. 1989) (identifying that "a *serious deterioration* of health while incarcerated" may be a special circumstance) (emphasis added).

Just as Toledo's health needs do not justify his release, neither do his wife's. Her need for care following forthcoming hip replacement surgery is not a special circumstance. *See, e.g.*, *Duca v. United States*, No. CIV.A.CV-95-713(DGT), 1995 WL 428636, at *15-16 (E.D.N.Y. July 7, 1995), *aff'd sub nom. Lo Duca v. United States*, 93 F.3d 1100 (2d Cir. 1996) (fugitive's claim to be "an indispensable caretaker" for his wife, who had Alzheimer's dementia, and to have a "calming affect [sic] on her" was not a special circumstance); *cf. In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992) (special circumstances must be "extraordinary" and not factors applicable to all fugitives facing extradition). Accordingly, Toledo's attempt to rely on *Wright*'s special circumstances standard to maintain his release is unavailing.

## CONCLUSION

For the foregoing reasons, the Court should revoke its Order releasing Toledo on bail and should remand him to the custody of the United States Marshal pending the Secretary of State's decision on Toledo's surrender to Peru and, if warranted, his transfer to the custody of Peruvian authorities.

DATED: October 20, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

/s/
_____
KYLE F. WALDINGER
Assistant United States Attorney

CHRISTOPHER J. SMITH
Associate Director

REBECCA A. HACISKI
Trial Attorney
Office of International Affairs