UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE | Case No. 19-mj-71055-MAG-1   (TSH)<br><br>**ORDER DENYING MOTION TO REVOKE BAIL AND REMAND TO CUSTODY**<br><br>Re: Dkt. No. 189 |

On September 28, 2021, the Court certified Alejandro Toledo's extraditability to the Secretary of State pursuant to 18 U.S.C. § 3184. ECF No. 188. The United States now moves to revoke bail and to remand Toledo. ECF No. 189. The government makes two arguments. First, it contends that detention is mandatory under the plain language of section 3184. Second, the government argues that even if the special circumstances test still applies post-certification, special circumstances no longer warrant bail and that Toledo is a risk of flight.

Let's consider the plain language argument first. If you just read section 3184 in isolation, it looks like the government is right. The statute states that after certifying a person as extraditable, the Court "*shall* issue [a] warrant for the commitment of the person so charged to the proper jail, *there to remain* until such surrender shall be made." (emphasis added) That language seems clear enough: the word "shall" is usually mandatory, and "there to remain" sounds like the person has to stay in jail. The length of detention authorized by section 3184 appears to be mitigated by 18 U.S.C. § 3188, which allows the extraditee to seek release from custody if he is not surrendered to the country seeking his extradition within two months. So, from the statute's plain language, it seems that at least the first two months of custody are mandatory, but there is a safety valve if the government takes too long to actually accomplish the extradition.

But at this point we need to consider the Supreme Court's decision in *Wright v. Henkel*, 190 U.S. 40 (1903). In that case, the Court considered a petition for a writ of habeas corpus brought by Whitaker Wright, who was challenging his detention pending an extradition request by the United Kingdom. Most of the Court's opinion addressed whether Wright had been charged with an extraditable offense within the meaning of the relevant treaties. The Court found that he had been, "and that brings us to consider whether the commissioner or the circuit court erred in denying the application to be let to bail." *Id*. at 61. The Court explained that "[n]ot only is there no statute providing for admission to bail in cases of foreign extradition, but § 5270 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3591), is inconsistent with its allowance after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.'" *Id*. at 62. The discerning reader will notice that this statutory language considered in *Wright* is nearly identical to the current text of 18 U.S.C. § 3184. The next sentence of the Court's opinion indicates that it was also true in 1903 that a person ordered committed but not yet delivered could seek release after two months. *See id*.

In the next paragraph of the Court's opinion, the Court explained why bail generally should be denied in extradition cases: "The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." *Id*. The Court further explained that "the same reasons which induced the language used in the statute" that seem to forbid bail after committal "would seem generally applicable to release pending examination." *Id*.

The next paragraph of the Court's opinion discussed a decision by the district of Colorado, which held that in the absence of express authority allowing bail in extradition cases, it was not permitted. *See id*. The paragraph after that referred to the lower court's decision in *Wright*, which had noted that bail applications in extradition cases had been uniformly denied. *See id*. at 62-63.

We then come to this interesting paragraph: "In *Queen* v. *Spilsbury* [1898], 2 Q. B. 615, it was held that the Queen's Bench had, '*independently of statute*, by the common law, *jurisdiction to admit to bail*,' but that was a case arising under the Fugitive Offenders Act [44 and 45 Vict. chap. 69], and the distinction existing ordinarily between rendition between different parts of Her Majesty's dominions, and cases arising under the Extradition Acts, was pointed out.  The court, *while ruling that the power to admit to bail existed*, held that, as matter of judicial discretion, it ought not to be exercised in that case." *Id*. at 63 (emphasis added)

The Supreme Court then stated:  "We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief." *Id*.  The Court went on to state that the denial of bail in that case was not an error.  *See id*.

It looks like the Supreme Court followed the *Spilsbury* case and held that in extradition cases, the power to grant bail exists independently of statute.  There's really no other way to read the words "[w]e are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute . . . ."  In this case the government tries to distinguish *Wright* by arguing that it was a pre-certification case, which it was, but the Supreme Court itself rejected that distinction.  The Court specifically cited the language that seemed to prohibit post-certification bail and said "the same reasons" that induced that "language used in the statute would seem generally applicable to release pending examination." *Id*. at 62.  The Court did not think those situations were different.  *See Garcia v. Benov*, 2009 WL 6498194, *5 n.23 (C.D. Cal. April 13, 2009 ("*Wright* suggested that the same reasoning governs pre-certification and post-certification bail requests").  It would seem, therefore, that *Wright* stands for the proposition that both pre- and post-certification, the availability of bail is not limited to what is "specifically vested by statute."

Toledo cites a slew of lower court decisions holding that bail is permitted in extradition cases post-certification.  *See Garcia*, 2009 WL 6498194, *5 n.23 ("The court rejects respondent's argument that the courts are without power to grant bail following certification of a request for

3

extradition.); *In the Matter of the Extradition of Israel Ramirez Luna*, No. 16-xr-90095 (N.D. Cal. March 30, 2017), ECF No. 64 (finding that 18 U.S.C. § 3184 does not require detention following certification of extradition); *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1005 (D.Ariz. 2009) ("And while [*Wright*] arose during the pre-certification stage of extradition, subsequent case law has made clear that the special circumstance test is applicable in both the pre- and post-certification stages of extradition."); *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 598 (W.D. Va. 2013) ("[T]he government's argument that the court lacks power to grant bail after certification has been expressly repudiated by several federal courts."); *Matter of Extradition of Blasko*, 2019 WL 498986, *4 (E.D. Cal. Feb. 8, 2019) ("The Court finds that it has the authority to release an extraditee on bail after certification of extraditability."); *Matter of Extradition of Gonzalez*, 2015 WL 1409327, *5 (N.D. Cal. March 27, 2015) ("This court agrees with courts that have concluded that they have authority to consider bail in international extradition cases even after a certificate of extraditability has issued, notwithstanding the language of § 3184."); *United States v. Kollmar*, 2021 WL 179606, *11 (N.D. Cal. Jan. 19, 2021) (ordering that extraditee shall remain released on bail following certification); *In re Kapoor*, 2012 WL 2374195, *3 (E.D.N.Y. June 22, 2012) ("courts . . . have not drawn any distinction between pre- and post-certification bail applications and have time and again considered bail requests after a judicial finding of extraditability.") (collecting cases).

Further, three Circuits have applied *Wright*'s special circumstances test in post-certification bail proceedings. *See Salerno v. United States*, 878 F.2d 317, 317-18 (9th Cir. 1989); *Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977); *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981).

In *Nezirovic*, the court observed that "the government cites only one decision adopting its statutory construction argument. However, in that case the extraditee did not contest the point, and the court did not squarely address the issue. Thus, its precedential value is negligible." 990 F. Supp. 2d at 599 (declining to follow *In re Extradition of Markey*, 2010 WL 610975, *4 (N.D. Ind. Feb. 18, 2010)); *see also Blasko*, 2019 WL 498986 at *3 ("[S]ince Markey agreed that the Court had no authority to release him after finding him extraditable, the opinion contains no analysis or

4

1  discussion to support the conclusion that the court did not have the authority to grant bail and the
2  Court finds *Markey* to have little precedential value."). The government does the same in this
3  case. Reply Brief, ECF No. 195 at 1 n.1 (citing *Markey* as its only extradition case in support of
4  its position).

5        The government cites *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), a case involving the
6  Immigration and Nationality Act, not extradition, and argues that the case shows by analogy that
7  18 U.S.C. § 3184's plain language shows that detention post-certification is mandatory. However,
8  the government has missed the point. In *Wright*, the Supreme Court itself acknowledged that the
9  predecessor to section 3184 was "inconsistent" with bail, but the Court went on to reject the
10 proposition that "the circuit courts possess no power in respect of admitting to bail other than as
11 specifically vested by statute . . ." 190 U.S. at 63.

12       The Court concludes that under *Wright* and subsequent case law, the Court has authority to
13 release on bail following certification under the familiar "special circumstances" test. *See*
14 *Salerno*, 878 F.2d at 317-18. Normally in applying that test, the Court would address flight risk
15 first (there being no contention Toledo is a danger to the community) and then address special
16 circumstances, but here the Court will address the proffered special circumstances first because
17 they impact flight risk.

18       First, Toledo states that although he is fully vaccinated against COVID-19, at 76 years old
19 he remains vulnerable to break-through infections, which are more likely to occur in a jail.
20 Second, he argues that a return to custody would be detrimental to his mental health, which is
21 already in decline. Third, he states that in July he suffered a traumatic fall and sustained a
22 complex fracture of the right shoulder, requiring major surgery and replacement of the joint with a
23 titanium prosthesis. He states that he continues to require a carefully monitored regimen of pain
24 management and physical therapy to regain function in his right upper extremity. He says this is
25 in addition to his other, longstanding medical problems. Fourth, he states that his wife has
26 degenerative hip osteoarthritis and needs hip replacement surgery. During the recovery period
27 following surgery, she will be dependent on him in performing basic daily activities.
28       The Court believes that the first, third and fourth factors considered together give rise to

special circumstances warranting Toledo's continued release on bail.[1] The shoulder injury demands a continued level of medical care that a jail cannot realistically provide. A break-through COVID infection in jail poses very different risks for a 76 year old than it does for, say, a 25 year old. And his wife's dependency on him following hip surgery is an appropriate factor to consider. Jailing Toledo while he challenges the Court's certification to the Secretary of State[2] – or even just for the two months until 18 U.S.C. § 3188 kicks in – would be an unnecessary cruelty.

Finally, the Court addresses flight risk. The Court has always considered Toledo to be a flight risk. It has attempted to mitigate that risk through conditions of release, including cash bail, electronic monitoring and other conditions. To date, despite being vaccinated against COVID, Toledo has not attempted to flee. The Court thinks that Toledo's and his wife's deteriorating physical condition further mitigates against the risk of flight. They both need ongoing medical treatment, and they are in a stable living situation in which they are able to get it. Fleeing to another country would disrupt this situation for them, especially since Toledo's first stop in another country as an international fugitive might well be jail. Under the circumstances, and while the risk that Toledo will flee can never be completely mitigated, the Court believes that his continued release on bail is warranted.

Accordingly, the United States' motion to revoke bail and remand to custody (ECF No. 189) is denied.

**IT IS SO ORDERED.**

Dated: October 29, 2021

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] The Court is skeptical of the mental health argument for the reasons expressed by Judge Chhabria at ECF No. 100 at 6-7.

[2] Toledo has filed a petition for a writ of habeas corpus challenging the certification. *See Manrique v. O'Keefe*, No. 21-cv-8395 (N.D. Cal.).