JODI LINKER
Federal Public Defender
MARA K. GOLDMAN
TAMARA CREPET
Assistant Federal Public Defenders
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:     (408) 291-7753
Facsimile:      (408) 291-7399
Email:            Tamara_Crepet@fd.org

Counsel for ALEJANDRO TOLEDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEJANDRO TOLEDO MANRIQUE. | Case No. 19-mj-71055-MAG (TSH) **OPPOSITION TO GOVERNMENT'S RENEWED MOTION TO REVOKE BAIL AND REMAND TO CUSTODY** Court: Courtroom A, 15th Floor  Hearing Date: March 9, 2023  Hearing Time: 10:00 a.m. |

## INTRODUCTION

On October 29, 2021, the Court denied the government's previous motion to revoke Dr. Toledo's bail and remand him to custody. The Court's reasons for denying the government's motion then are equally compelling now. Dr. Toledo's health continues to deteriorate and he continues to require specialized medical care and monitoring. In the aftermath of her hip surgery, his wife continues to require assistance to carry out basic daily activities. The government asserts that Dr. Toledo must be detained as a flight risk, but in the three years he has been out of custody he has never sought to leave the Northern District, much less attempted to flee the country. Indeed, Pretrial Services has no opposition to permitting Dr. Toledo to remain out of custody. Even if the Court were

to determine that a remand is appropriate, it would be premature because the extradition is stayed until the Ninth Circuit decides whether to grant Dr. Toledo's renewed request for a stay pending resolution of his appeal.

For all of these reasons, the government's motion should be denied.

## ARGUMENT

**I.  The extradition is currently stayed.**

The government argues that Dr. Toledo should be remanded because the State Department has decided to proceed with his extradition. Govt. Motion at 2. On February 23, 2023, however, the Honorable Laurel Beeler stayed the extradition to allow Dr. Toledo to renew his motion for a stay in the Ninth Circuit. *See* Order Granting Temporary Stay, Habeas Dkt. No. 36; Ninth Circuit Rule 27-2. Dr. Toledo's motion for a stay is currently pending before the Ninth Circuit. *See* Appellant's Renewed Motion for Stay Pending Appeal, CA 22-15705, Dkt. No. 41. Until the Ninth Circuit rules on that motion, Judge Beeler's stay remains in force.

If this Court remands Dr. Toledo and the Ninth Circuit grants the motion to stay, Dr. Toledo could languish for months in custody while the parties wait for the Ninth Circuit to decide his appeal.[1] Even if the Ninth Circuit ultimately denies the stay, the parties do not know how long it will take the Court to do so. It took four months for the Ninth Circuit to rule on Dr. Toledo's previous motion for a stay. *See* Order, CA 22-15705, Dkt. No. 22. It would be "an unnecessary cruelty," Dkt. No. 198 at 6, to leave Dr. Toledo in jail while the parties wait for a decision from the Ninth Circuit.

In short, the current circumstances are unchanged: as before, there is a stay in place that prevents Dr. Toledo's extradition. Unless and until that stay is lifted, there is no more reason for the Court to remand Dr. Toledo now than there was when it certified his extradition.

**II.  The special circumstances identified by this Court in its previous order still exist.**

On October 29, 2021, this Court denied the government's previous motion to revoke bail and remand Dr. Toledo to custody. Dkt. No. 198. The Court held that, "under *Wright*[2] and subsequent

---

[1] It typically takes between three months and a year for a decision once oral argument is completed and the case is submitted. *See* United States Court of Appeals for the Ninth Circuit, *Frequently Asked Questions*, ca9.uscourts.gov/general/faq/.
[2] *Wright v. Henkel*, 190 U.S. 40 (1903).

2

case law, the Court has authority to release on bail following certification under the familiar 'special circumstances' test." *Id.* at 5 (citing *Salerno v. United States*, 878 F.2d 317, 317-18 (9th Cir. 1989)).

The Court found that three special circumstances supported the decision to allow Dr. Toledo to remain out of custody. *Id.* at 5-6. First, although he was fully vaccinated, Dr. Toledo was 76 years old and "remain[ed] vulnerable to break-through infections, which are more likely to occur in a jail." *Id.* at 5. Second, in addition to his other longstanding health problems, Dr. Toledo had sustained a complex fracture of his right shoulder, requiring major surgery and replacement of the joint with a titanium prosthesis. His injury required a carefully monitored regimen of pain management and physical therapy to try to regain function in his right upper extremity. *Id.* Third, his wife was preparing to undergo surgery for degenerative hip osteoarthritis and would be dependent on him following surgery for help in performing basic daily activities. *Id.* As detailed below, these circumstances still exist, and Dr. Toledo's physical health has yet further deteriorated since October of 2021.

Dr. Toledo is fully vaccinated, but he will be 78 years old in a few weeks. As of February 28, 2023, eight people at Santa Rita Jail were positive for COVID (six inmates and two staff members). Declaration of Caitlin Frediani ("Frediani Decl.") at ¶ 3, attached hereto as Exhibit B. Approximately two-thirds of the inmates at Santa Rita are unvaccinated. *Id.* At Maguire Jail, only about 65% of the inmate population has had one or more doses of the COVID vaccine, and three inmates are currently positive for COVID. *Id.* at ¶ 4. Dr. Toledo's overall health is fragile; he has numerous physical and mental health issues for which he takes medication, and his physical health has generally declined. *See* Under Seal Declaration of Tamara Crepet ("Under Seal Crepet Decl."), submitted under seal as Exhibit C, at ¶ 4 & Attachment 3. As an elderly man in poor health, Dr. Toledo continues to be at increased risk for severe illness or death, a risk that will increase dramatically if he is in custody.

Dr. Toledo continues to recover from two surgeries, the first performed on his right shoulder, and the second performed on his right elbow and right brachial plexus. *See id.* at ¶ 2 & Attachment 1. He continues to require monitoring by an interdisciplinary team, and continues to take prescription pain medication and attend physical therapy sessions. *Id.* According to his surgeon, if this course of treatment is interrupted, Dr. Toledo risks "worsening function and disability." *Id.*

When the Court denied the government's previous motion, Dr. Toledo's wife was preparing for hip surgery. She has now had the surgery, but she remains dependent on Dr. Toledo for help performing basic life functions. *See id.* at ¶ 3 & Attachment 2.

Particularly now that he faces the prospect of being surrendered to Peru and imprisoned there, it is essential that Dr. Toledo do everything he can to treat his medical problems while he has access to his medical team, who are currently working with him to solidify medication regiments for his physical and mental health conditions. *See id.* at ¶¶ 2, 4, 5 & Attachments 1,3, 4.

### III. Dr. Toledo is not a flight risk.

In its October 2021 order, the Court concluded that "while the risk that Toledo will flee can never be completely mitigated," that risk was sufficiently address by the conditions of pretrial release, particularly given the fact that both Dr. Toledo and his wife were in need of ongoing medical treatment. Dkt. No. 198 at 6. As discussed above, both Dr. Toledo and his wife continue to require treatment and careful monitored by several physicians.

Significantly, Pretrial Services does not oppose Dr. Toledo's continued release until the Peruvian authorities are present in the United States and prepared to bring Dr. Toledo to Peru. Declaration of Tamara Crepet, attached hereto as Exhibit A, at ¶ 2. Dr. Toledo has not made any attempt to flee in the three years since his release, and his treating therapist confirms that he has never "expressed any intent to flee or discussed any plans to flee." *See* Under Seal Crepet Decl. at ¶ 5 & Attachment 4. On the contrary, Dr. Toledo is committed "to vindicating himself in court and restoring his public reputation," and that it is "important to him to honor his obligations to the friends who have supported his release." *See id.*

The government argues that Dr. Toledo "should be detained in advance of the date of surrender so as to ensure that he or she will actually be available for the transfer of custody." Govt. Brief at 2. Here, there is no reason to doubt that Dr. Toledo will be available. He is prepared to self-surrender to the U.S. Marshals prior to the arrival of Peru's representatives. The Marshals can then make the transfer of custody. His Pretrial Services Officer, who is in a better position than government counsel to assess this situation, does not oppose this plan.

**IV.  At a minimum, the Court should not remand Dr. Toledo until the government has ensured that he will not be returned to solitary confinement and the travel plans for Peru's representatives are in place**

As this Court is aware, Dr. Toledo spent the first three months of this case in solitary confinement at the Santa Rita Jail. It was not until the district court ordered Dr. Toledo's release from custody unless the government was able to find "an alternative detention arrangement," Dkt. No. 43, that Dr. Toledo was finally taken out of solitary and moved to Maguire.

As the district court explained in its order:

> He has been held in solitary confinement for nearly three months at the Santa Rita Jail. ... That designation confines Toledo to a small cell for all but an hour of every two days. According to the staff psychiatrist at the jail, detention under these conditions has already initiated a marked decline in Toledo's mental health. Especially for a person who has not been convicted of a crime, the severity of this restraint on liberty raises serious due process concerns.

*Id.* at 2 (citing *Davis v. Ayala*, 135 S.Ct. 2187, 2208-10 (2015) (Kennedy, J., concurring)). In the absence special planning, Dr. Toledo will be returned to Santa Rita and, presumably, to solitary confinement. This would be unreasonably cruel and it would also raise "serious due process concerns." *Id.*; *see also* Under Seal Crepet Decl. at ¶ 5 & Attachment 4.

There are many unknown variables at this juncture. Even if the Ninth Circuit declines to stay these proceedings, it is unknown how long it will take Peruvian authorities to make arrangements to come to the United States. Allowing Dr. Toledo to self-surrender to the U.S. Marshals once those arrangements have been made is the most humane approach. Alternatively, the Court should not remand Dr. Toledo until it has been assured by the government that arrangements have been made to ensure that Dr. Toledo will not be returned to solitary confinement or the Santa Rita Jail, that he will have access to medical and psychiatric care, and that the government will work with Peru to minimize the amount of time he spends in custody.

5

**CONCLUSION**

For all of these reasons, Dr. Toledo respectfully requests that this Court permit him to continue to remain on bond and out of custody.

Dated:	March 1, 2023	Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

_____s/_____
MARA K. GOLDMAN
TAMARA CREPET
Assistant Federal Public Defenders